*Decision will be entered under Rule 50.*

DOROTHY WHITNEY ELMHIRST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85040, 85880, 95298.   Promulgated February 14, 1940.

*John H. Alexander, Esq.*, for the petitioner.
*Thomas H. Lewis, Jr., Esq.*, for the respondent.

### OPINION.

DISNEY: These proceedings, duly consolidated, involve income taxes for the years 1932, 1933, and 1934, in the amounts of $69,979.46, $407,156.83, and $442,281.20, respectively. A large portion of the facts was stipulated. The facts so stipulated are adopted by reference as our findings of fact, and, in addition thereto, we will set forth hereinafter certain other findings of fact.

The petitioner, a resident of Devonshire, England, kept her accounts and prepared her income tax returns, during all the years material to this proceeding, upon a calendar year basis and upon the basis of cash receipts and disbursements. About November 23, 1924, Straight Securities Corporation, hereinafter referred to as the corporation, was organized under the laws of Delaware, and has at all times material kept its books and made its income tax returns on a calendar year basis and on the basis of an accrual method of accounting. The original authorized capital stock was 1,000 shares of no par value, which were acquired by the petitioner about November 30, 1924, in exchange for securities of a fair market value of $19,830,365.52. Petitioner remained sole owner of all of the capital stock of the corporation until March 20, 1931. On that date the authorized stock was increased by 50,000 shares of 6 percent cumulative preferred stock of the par value of $100. The outstanding 1,000 shares of capital stock became common stock of no par value, and until December 31, 1934, petitioner remained owner thereof. On April 1, 1931, the corporation issued to petitioner 15,000 shares of the authorized preferred stock, as a dividend upon the common stock, and on that date petitioner transferred, as gifts, such preferred stock in equal amounts of 5,000 shares each to trustees in trust for her three minor children,

one of whom arrived at majority November 6, 1933, the others remaining minors during the taxable years. In addition to the preferred stock given to the trustees on April 1, 1931, the trustees purchased additional preferred stock in the corporation, purchasing up to April 19, 1933, 143 shares which were repurchased by the corporation about December 26, 1933. The trustees also purchased an additional 1,382 shares up to October 1, 1934, which were all held by the trustees until after the close of the year 1934. On September 13, 1933, the corporation issued to petitioner a dividend on common stock of 7,500 shares of preferred stock, of a fair market value of $750,000, which on September 14, 1933, petitioner transferred to the trustees of the trusts above referred to. On June 29, 1934, the authorized stock of the corporation was increased by 40,000 shares of 5 percent cumulative preferred stock, of a fair market value of $4,000,000, and same was distributed to petitioner as a dividend on common stock; and on August 2, 1934, petitioner transferred the 40,000 shares of 5 percent preferred stock to Dartington Hall Trust, which was a trust created by petitioner and her husband on July 26, 1932, and complied with the requirements of a charitable trust under section 23 (o) of the Revenue Act of 1934. At the date of the creation of the trust and at the date of the transfer to it of the 40,000 shares of preferred stock, the trust was revocable by petitioner and her husband with the consent of the trustees, but on August 31, 1934, the power to revoke was surrendered by deed by the grantors, who reserved the right to amend the trust, provided no amendment should cause the trust premises or income thereof to be used otherwise than for religious, charitable, scientific, literary, or educational purposes.

The following table sets forth by years (a) the book net income as adjusted by the Commissioner, on the basis of cost to corporation of securities, (b) net income on basis of transferor to corporation, (c) net income as defined by section 104 (c) of the Revenue Acts of 1928 and 1932 (section 220 (d), Act of 1926), and (d) amount included in gross income by petitioner under section 104 (d) of the Revenue Act of 1928 (section 220 (e), Act of 1926):

| Year. | Book net income on basis of cost to corporation. | Net income on basis in hands of transferor. | Net income as defined in sec. 220 (d), Act 1926, and sec. 104 (c), Acts 1928 and 1932. | Gross income under sec. 220 (e), Act 1926, and sec. 104 (d), Act 1928. |
|---|---|---|---|---|
| 1925 | $100, 960. 81 | $100, 960. 81 | $99, 700. 40 | $100, 960. 81 |
| 1926 | 934, 531. 56 | 2, 348, 061. 77 | 2, 543, 420. 42 | 934, 531. 56 |
| 1927 | 2, 255, 287. 92 | 3, 280, 798. 81 | 3, 581, 633. 78 | 1, 233, 326. 26 |
| 1928 | 1, 335, 623. 90 | 1, 374, 631. 40 | 1, 366, 372. 30 | 1, 335, 623. 90 |
| 1929 | 1, 606, 217. 55 | 1, 604, 976. 30 | 1, 600, 195. 29 | 1, 606, 800. 44 |
| 1930 | 1, 650, 941. 68 | 1, 654, 814. 06 | 1, 642, 709. 06 | 1, 650, 941. 68 |
| 1931 | 351, 816. 39 | 354, 147. 50 | 343, 140. 41 | 287, 424. 01 |
| 1932 | [1] (134, 950. 22) | 1, 256, 121. 47 | 1, 251, 447. 46 | None |
| 1933 | [1] (7, 664. 09) | 1, 304, 569. 65 | 1, 344, 540. 70 | None |
| 1934 | [1] (173, 094. 52) | 422, 647. 38 | | |

[1] Loss.

In the year 1927 petitioner did not include in her income the sum of $1,021,961.66, earnings and profits of the corporation; as to 1928, she included in income slightly less than net income as defined by section 104 (c) of the Revenue Act of 1928; as to 1929 and 1930, she included more than the net income of the corporation as so defined; and, as to 1931, the parties do not disagree that the corporation distributed more than its earnings and profits. She did not include any corporate income as to 1932 and 1933, and the parties stipulate that during 1932 and 1933 the corporation was not within the provisions of section 104 of the Revenue Act of 1932 and that the corporation was in 1934 a personal holding company within the meaning and intent of section 351, Revenue Act of 1934. It was dissolved in 1936.

The corporation had on its books on December 31 of each of the years 1931, 1932, 1933, and 1934, surplus in the following respective amounts: $5,526,918.62; $4,903,141.19; $3,344,653.38; and $7,740,572.55.

In addition to the facts stipulated, we find, and set forth here as a matter of logical order, the following facts:

The income tax return filed by the corporation for the year 1932 shows a loss in February 1932 from sale of stocks and bonds, in the amount of $436,429.78, and no loss or gain upon sales of stocks or bonds in January 1932. The corporation's income tax report for 1933 shows a loss from sale of stocks and bonds in the amount of $381,066.75 in November 1933. The business of the corporation as stated in the returns was investing in stocks and bonds, and no loss is set up from any other source. The corporate books were closed once a year on December 31, and estimates of accruals made. As a more or less general practice, accruals were determined only at the end of the year. Monthly trial balances were prepared.

A closing statement of the corporation showing its financial condition as of any date, except December 31, and the results of its operations for any period could not be determined from the books alone. The preparation of a closing statement showing financial condition, other than as of December 31, would require outside information, such as financial publications, market value of securities, solvency of debtors, etc. Such closing of the books would be a considerable task. To do so for the 24 months from January 1, 1932, to December 31, 1933, would require many weeks. The books of the corporation were cash book, journal, general ledger, and a subsidiary ledger, containing the details of the corporation's security investments. They show losses on capital assets at the dates when sold throughout the year. Monthly trial balances, appearing among the corporation's records, for 1932 and 1933 reflect some accruals, but not all, except for December when the remainder appear on income tax returns.

During 1932 the investments of the corporation as, reflected in its income tax return were approximately $25,000,000, all of which were stocks, bonds, and governmental securities, except approximately $1,500,000, and the corporation had an income from dividends of $1,221,017 out of a total gross income of $1,340,059.81, with $88,269 as dividends receivable on December 31. During 1933 the corporation's investments according to the income tax report ran from approximately $24,500,000 at the beginning of the year to approximately $26,500,000 at the end of the year, all of such investments being in stocks, bonds, and governmental securities, except approximately $1,500,000, and income reported from dividends was $1,009,478.70 out of a total gross income of $1,609,455.77 with $81,786.40 dividends receivable December 31. By far the greater portion of the investments were in common stocks. The liabilities of the corporation, other than capital stock reported in the income tax returns, were as follows: 1932, beginning of year, $749,108.85; end of year, $202,-973.62; and at the end of 1933, $2,320,194.77, including $2,250,000 notes payable. In 1932 and 1933 the larger losses in general occurred in the latter part of each year. The income tax returns show salaries paid of $25,000 per year and show that current liabilities were comparatively small and more than equaled by cash and receivables, except $2,250,000 notes payable appearing at the end of 1933.

The deficiencies were determined in the main because of distributions on common stock from the corporation to petitioner and on preferred stock to trusts set up by her, which distributed in part to beneficiaries, all in the following amounts:

| Year | Cash distributions on common stock. | Federal income taxes paid by corporation for petitioner. | Cash distributions to beneficiaries from dividends on preferred stock. |
| --- | --- | --- | --- |
| 1932 | $155,000.00 | $43,793.80 | $41,303.00 |
| 1933 | 850,000.00 | | 54,790.00 |
| 1934 | 850,000.00 | | 63,322.96 |

As to the items $155,000, $850,000, $850,000, and $43,793.80, the issue is whether, as respondent contends, they were taxable because distributed, in the main, from corporate earnings and profits of the years 1932, 1933, and 1934 and in a lesser degree from earnings and profits of the year 1927, as to which year admittedly petitioner failed to report as income the sum of $1,021,961.66 income of the corporation; or whether, as petitioner contends, the distributions were exempt under section 104 (d) of the Revenue Act of 1932 from tax because they were from the corporate earnings and profits of 1929 and 1930 which she had included in her income, and because at the end of each of the years 1932, 1933, and 1934 the corporation, which was on an

accrual basis and closed its books only at the end of each year, had a net loss for the year.

The items of $41,303, $54,790, and $63,322.96 were not distributed to petitioner but were included in larger amounts distributed to trusts set up by her, owning preferred stock, which trusts in turn distributed the items in the above amounts to beneficiaries. As to these amounts respondent contends that the statute does not apply, in terms, because distribution was not made to petitioner herself; but that even if within the literal terms of the statute the distributions were not exempt, first, because they were in part from earnings and profits of the year of distribution and in part from income of 1927, a previous year not reported by taxpayer, and, second, because under *Douglas* v. *Willcuts*, 296 U. S. 1, the distributions were for the discharge of petitioner's legal duty to support her children and were therefore taxable to her. Petitioner, though earlier relying only upon the idea that the distributions to her were from earnings earlier reported by her and admitting the effect of *Douglas* v. *Willcuts*, *supra*, now relies upon *Jay C. Hormel*, 39 B. T. A. 244, and contends for exemption from tax also upon the theory that there was no mandate in the trust to devote the funds to discharge of legal duty to support (though not denying actual use for that purpose). Certain minor issues have been disposed of by stipulation and need not be discussed.

Petitioner meets respondent's contention that the distributions were from current earnings and profits of the years when distributed by pointing out that respondent computed such earnings and profits (so far as from securities transferred to the corporation by petitioner for stock) on an erroneous basis, i. e., on basis in hands of transferor, instead of cost to corporation. She contends that there was, therefore, at the end of each year of distribution, instead of the profit computed by respondent, a net loss; that such net loss must be prorated over the year because the corporate books were closed only at the end of the year and it is impossible to ascertain from the books the condition as to profit or loss at any date earlier than the end of the year—with the result that there was loss, and no earnings or profits available for distribution, at all of the dates when distributions were made. To this respondent replies that his determination that the distributions were (in part) from current earnings and profits is correct, first, because his computation of profit and loss on a basis of cost to transferor is correct, and, second, because accepting as correct the earnings and profits as shown by the corporate books, there were in fact at the various dates when distributions were made current earnings and profits actually available for the distributions then made; that the burden of showing otherwise is upon the petitioner; and that a net loss when the books were closed at the end of the year

**354**

does not so demonstrate. So contending as to only part of the distributions, he argues that the remainder, a minor portion, was from earnings and profits of 1927, as the most recently accumulated earnings and profits under section 115 (b), Revenue Act of 1932. He relies upon the presumption of correctness of his determination as to 1934, but as to 1932 and 1933 relies also upon certain evidence adduced by him, which he contends demonstrates that losses were not ratably incurred as petitioner argues; and on other evidence establishing affirmatively, he argues, that there were current earnings and profits available to cover, in large part, the various distributions when made.

I. We first examine the question of proper basis for computation of profit or loss: Respondent concedes that the Board has decided this question adversely to him in *W. S. Farish & Co.*, 38 B. T. A. 150, and *Ida I. McKinney*, 32 B. T. A. 450; affd., 87 Fed. (2d) 811, to the effect that for the purpose of ascertaining the amount of earnings and profits available for distribution as dividends, cost to the corporation should be used rather than the statutory basis for determining gain or loss for purpose of computing tax. Since *W. S. Farish & Co.* has been affirmed, 104 Fed. (2d) 833, by the Circuit Court of Appeals for the Fifth Circuit, and since the same conclusion, in effect, in *F. J. Young Corporation*, 35 B. T. A. 860, has been affirmed by the Circuit Court of Appeals for the Third Circuit, 103 Fed. (2d) 137, further discussion of this point is unnecessary, and we hold, in accordance with said cases, that the proper basis is the basis of cost to the corporation. The same decisions require a holding against the respondent upon two minor items entering into the computation of profit or loss of the corporation, to wit, whether $287,586.36 is an allowable deduction for losses for 1932 from sale of securities held less than two years, losses on wash sales, and taxes: and whether $144,979.18 is an allowable deduction for the year 1933 because of adjustment to cost of securities sold, and losses on wash sales. The same logic dispositive of the above cases indicates that such deductions, though not to be taken into consideration in arriving at *taxable* net income, should be deducted in computing earnings or profits of the corporation in the determination of avails for distribution. Since the parties have stipulated that as computed by petitioner and in the manner approved by us above, the book net income of the corporation, as adjusted, represents the earnings and profits of the corporation, we hold that the corporate books of Straight Securities Corporation properly show a loss as of December 31 of each of the years in question, 1932, 1933, and 1934, in the amounts contended for by the petitioner, sustained as a net result of the operations of the whole of each of said years.

II. We next consider the petitioner's contention that the corporate books, closed only at the end of each of the years of distribution, then showed a net loss for the year, and that, since it was impossible from

such books alone to prepare a closing statement fairly reflecting the financial position of the company at any earlier date, it must be presumed that there were, on petitioner's theory of prorating such year's loss to any date of distribution, no current earnings or profits available for distribution at the dates when distributions were actually made. Respondent contends that his determination that there were such earnings and profits available should be sustained as to all years on the burden of proof, the petitioner having failed to show the actual condition or earnings and profits on the dates of distribution, and that he, the respondent, has, as to 1932 and 1933, affirmatively shown that the net loss was in fact not ratably incurred throughout the year and that there were, on petitioner's own basis of computation, actual earnings and profits available on the dates of distribution.

We are required first, therefore, to examine the situation as to burden of proof. The petitioner does not question respondent's position on that ground as to 1932 and 1933. The deficiency notices for those years do not indicate upon what basis of computation of profit or loss the Commissioner determined the deficiencies. The notice for 1933 states that the petitioner's contention "is denied in view of the fact that Straight Securities Corporation had sufficient current earnings from which to pay the dividend in question," while that for 1932 is based in general terms upon dividends received, tax liability paid by the corporation, and reliance upon *Douglas* v. *Willcuts, supra.*

As to 1934, the deficiency notice covers both the $850,000 item and the $63,322.96 item under the general heading of dividends added to income as upon common and preferred stock "since the profits of the corporation reported and tax paid by the stockholders in prior years * * * were based upon the values applicable to certain assets on the date turned over to the corporation solely in exchange for its capital stock instead of the basis in the hands of the transferor." Petitioner points out in her reply brief that the deficiency letter as to 1934 raised only the question as to use of a base of cost to corporation, as against basis to transferor, in computation of gain or loss on sales of assets acquired on corporate organization, but in fact makes no issue of the burden of proof. To the respondent's statement, "She does not meet this burden by showing merely that the net result of the operations for the year considered as a unit was a loss," she responds: "The accuracy of the last quoted sentence is open to considerable doubt but its accuracy is only of academic interest in these proceedings. The petitioner did much more than show that the net result of the operations * * * was a loss."

However, whether or not the burden is contested, review of the deficiency notice, the pleadings, and the position taken by petitioner at trial demonstrates, we think, that the burden is properly left with

petitioner, as to 1934 as well as to 1932 and 1933. The petition specifically alleged error in the determination that the amounts involved were taxable dividends and constituted taxable income, alleged that the corporation had no earnings, gains, or profits available for distribution during 1932, 1933, and 1934, and that the distributions were made by the corporation from its earnings, gains, and profits, which petitioner had included in her gross income in her returns for prior years. This allegation the respondent specifically denied. At the preliminary hearing, principal hearing, and in her opening brief, petitioner defines the issue as involving the question of distribution from earnings or profits of the years of distribution. "The phrasing of the notice of deficiency * * * is not the cause of action and does not frame the issues." *Edgar M. Carnrick*, 21 B. T. A. 12. See also *Charles J. O'Laughlin*, 30 B. T. A. 1327; affd., 81 Fed. (2d) 269; *Gowran v. Commissioner*, 87 Fed. (2d) 125. We leave the burden of proof with the petitioner.

Does the proof before us show that such burden has been met? Petitioner on brief states: "The petitioner does not dispute that ordinarily the earnings and profits of a corporation available for distribution are to be ascertained to the dates of payment." She attempts to show compliance with that idea by prorating net loss appearing on the books at the end of the year. In other words, a presumption is offered instead of an affirmative showing of fact, because of claimed impossibility of proof from the corporate books alone.

We do not think the facts before us justify the application of the presumption petitioner invokes. The evidence does not show that the "most recently accumulated earnings or profits" (sec. 115 (b), Revenue Act of 1932) at such dates could not have been shown, in fact, or even that such could not have been shown by the corporate books alone, but only that the corporate books *alone* do not show *financial condition as sufficient for a closing statement* including valuation of securities, etc., and that to gather the necessary additional outside information to so close the books would be "considerable of a task", and to do so for the 24 months throughout the years 1932 and 1933 would "take many weeks" and would "be quite a considerable task." It thus appears that petitioner has not in fact shown failure of the books to show condition as to earnings or profits, but only that the books without outside information do not show complete financial condition. One of the principal reasons advanced by petitioner as to why the monthly trial balances prepared by the corporation and relied upon by respondent did not reflect accumulated earnings and profits was because of alleged accrual of dividends only at the close of each year in December. But dividends were in fact reflected throughout the year, and appear as accruals only in

small amount at the end of the year. Petitioner's witness testified that the corporation's monthly trial balances did not reflect less income from dividends than would have been reflected on the accrual basis, because there would be allocation of dividends between months, "the effect of which we could not tell without going to the trouble of looking up all dividend records." Yet the corporation's subsidiary ledger contained the "details of its security investments." Obviously, that ledger contained the "dividend records", and checking them would not have entailed great trouble. At least, petitioner has not shown otherwise. Since dividends comprised more than 90 percent of the corporation's total income in 1932, and more than 65 percent in 1933 and during the same years all of approximately $25,000,000 investments was securities except about $1,500,000, it is apparent that dividends upon investments were by far the most important item in the corporation's finances, and "going to the trouble of looking up all dividend records" and the examination of the "details of investment securities" in the property ledger would to a considerable extent at least have clarified the question. It was not necessary to show the exact financial situation at distribution dates, but only whether profit was more, or less, than the amount distributed.

In *Edwards* v. *Douglas*, 269 U. S. 204, Mr. Justice Brandeis said:

* * * Nearly every business with a well-developed accounting system can, at any time, without the formal periodic inventory or closing of its books usual at the end of a fiscal year, determine approximately the amount of its current earnings, the amount accrued since the beginning of its fiscal year, and the part thereof undistributed. Many corporations do make such approximate ascertainment of profits monthly, or oftener; and, relying upon their system of cost accounting, they make distributions of current earnings without a closing of the books as the Phelps Dodge Corporation did in 1917.

This is shown by the record to be true of the Phelps Dodge Corporation. It paid during 1917 regular and extra dividends on June 28, on September 28, and on December 28, aggregating $8,100,000, which were declared, in its report to stockholders, to have been paid by it "out of earnings for the year 1917."

We think the Court's language is peculiarly applicable here, for in *Arthur Curtiss James*, 13 B. T. A. 764, it appears that the Phelps Dodge Corporation kept its books apparently in the same manner as did Straight Securities Corporation—upon an accrual basis. "Neither the Phelps Dodge Corporation [nor certain others] kept their books in such manner as to show earnings or profits for the accounting periods within which distributions were made by them, but all of them * * * kept their books in such manner that their earnings were determinable or determined only upon an annual basis and at the end of each year." That such a situation was in the mind of the Court in *Edwards* v. *Douglas*, *supra*, and that though not upon the precise question here involved, substantially the same argument as

herein advanced by petitioner was there advanced is indicated when the Court says:

\* \* \* The argument is that the income tax is levied generally with reference to the period of a full year; that the net financial results of the full calendar and fiscal year of a corporation cannot be known until the expiration of the fiscal year; \* \* \* that it was after December 31, 1917, before the net financial results of the operations of that year were formally and definitely determined by this corporation, by the usual taking of the annual inventory, the balancing of the books, and the carrying of the "undivided profits or surplus" to the appropriate account; \* \* \*

The Court disapproved such contention. The question was one of definition of "most recently accumulated undivided profits", under the statute then in force; herein, it is as to most recently accumulated earnings or profits under section 115 (b), Revenue Act of 1932. Certainly there is no essential difference. Yet the Court pointedly held that the question was not one of what the corporate books showed, but one of fact, saying: "The word 'surplus' is a term commonly employed in corporate finance and accounting to designate an account on corporate books. But this is not true of the words 'undivided profits.' \* \* \* It is not known as designating generally in business an account on the corporation's books, as distinguished from profits *actually earned*, but not yet distributed." (Italics supplied.)

The Court concludes that "undivided profits" means *current undistributed earnings*, or as above seen "profits actually earned", and points to the use in the same paragraph of "earnings and profits"— the expression in the statute herein controlling—and refused to view the matter from the close of a fiscal year. Yet that is precisely what petitioner herein urges. We think the Supreme Court made a clear choice between profits in fact and profits, or lack of profits, if and when shown on books alone as basis of distribution, and we can not approve the latter as sufficient proof as to avails for distribution.

But if we assume that the books alone do not contain the necessary information, yet if what is said in *Edwards* v. *Douglas, supra*, is the fair statement of corporate practice, which we consider it to be, we think petitioner here could and should have made the showing there required, even outside of the corporate books. This is no situation involving some small stockholder having no control of a corporation, nor of a corporation with complex industrial relations involving inventories, unfinished contracts, or intricate problems of profit and loss. The corporation was very closely held. Petitioner was the owner of all of the common stock and trusts set up by her, and owned most of the preferred stock. Moreover, the corporation was not engaged in business in the broad sense, but in effect was the holder of about $25,000,000 in securities, drawing dividends therefrom. Petitioner seems to entertain the idea that in order to deter-

mine earnings and profits subject to distribution, it is necessary to ascertain appreciated or depreciated values of capital assets. Under *Edwards* v. *Douglas, supra,* this is not necessary, and only "current undistributed earnings" need be ascertained. The closure of the corporate books on December 31 did not in fact show the values of capital assets, for no inventories were taken, as shown by the income tax reports. It thus appears that earlier statements could have been made up showing substantially the same as the year-end statements did, except only such accruals as then appeared and were not taken up earlier. Some were and some were not reflected earlier. *The year-end statement, and basis of loss, is thus seen not to be based upon the information petitioner urges was necessary, outside the books, to determine avails for distribution. On that theory it may be that the annual statements would not reflect the net losses shown and relied upon, but might show profit, if assets were inventoried and valued.* The current liabilities of the corporation were a small percentage of its assets. Since only about 5 percent of its investments were other than stocks, bonds, or securities, the corporation could with no great difficulty have ascertained almost all of its capital values at any time, largely by consulting the current market quotations. Accruals, of course, are properly examined in ascertaining earnings and profits, and much stress is laid upon accrual of dividends. There is evidence that the accruals "as a more or less general practice" were only in December, from which petitioner to a large extent deduces that monthly trial balances did not represent financial position. Yet the corporation income tax returns for 1932 show $1,221,017 in dividends received and only $88,269 as dividends receivable on December 31; while the report for 1933 likewise shows $1,009,478.70 dividend income and only $81,786.40 as dividends receivable on December 31. The remainder, therefore, would appear as cash receipts throughout the year in question. We may fairly presume that the situation is not greatly different in 1934, since the evidence as to method of accruing in December seems general. Of course, other elements than dividends would enter into ascertainment of financial condition. Yet office expenses were small, salaries of $25,000 per year may fairly be presumed to be paid monthly, we think, current liabilities were small and more than equaled by cash and receivables, except an item of notes payable $2,250,000 appearing at the end of 1933. This may fairly be said throughout 1932 and 1933, and the manner of conducting business and keeping books was the same throughout 1934. It would appear reasonable therefore that a financial statement, along the lines described in *Edwards* v. *Douglas, supra,* could have been produced, sufficient for present purposes, more easily by a corporation of the

nature of Straight Securities Corporation than by the ordinary industrial corporation. Petitioner's position is essentially, not that she could not have shown the financial condition of the corporation at the date of distribution, but that it would have been too much trouble; therefore she relies upon the principle of proration of a year's loss, later appearing on the books. The nature of the corporation, the petitioner's position of control thereof, and its financial set-up, all indicate to us that we should not herein entertain a presumption as a substitute for ascertainable facts as to financial condition.

In *Bessemer Investment Co.* v. *Commissioner*, 31 Fed. (2d) 248, the Second Circuit Court of Appeals stated:

* * * the rights of the taxpayer should neither be established nor impaired by the bookkeeping methods employed by it. Douglas v. Edwards (C. C. A.) 298 F. 229. * * *

The corporation therefore was allowed to offer evidence contradictory of its books. Here the petitioner is urging that its methods of bookkeeping render further evidence unnecessary.

Petitioner cites *Mason* v. *Routzahn*, 275 U. S. 175. That case nowhere states that *book records* alone can be relied upon. It merely holds that the entire year's earnings will be prorated, not because the *books fail to show* the condition at distribution dates, but "in the absence of circumstances showing that there were no earnings *actually accumulated* during the fractional period." (Italics supplied.) The idea that silence in the corporate books is sufficient showing is definitely negatived. In fact the year's prorated net earnings may not have been ascertained from books alone. The test is definitely facts, not book records nor blanks in them.

We think *Edwards* v. *Douglas, supra*, refutes petitioner's theory that proration, as such, applied to a year's earnings, can be so utilized by petitioner as, in case of a year's net loss, to raise presumption of lack of earnings or profits at all times during the year. Since the limited statutory use of proration was repealed by section 201 (f) of the Revenue Act of 1921 it is obvious that proration of the year's earnings by the Commissioner has been sustained only because he had utilized it, in arriving at the deficiency, as he would any other method of determination, and proof to overcome the correctness of his determination had not been adduced, nor the determination shown to be arbitrary under *Helvering* v. *Taylor*, 293 U. S. 507. This does not justify the use of a presumption instead of facts by the petitioner. This is demonstrated in those cases where plaintiff or petitioner has sought to use the principle, such as in *Donahue* v. *United States*, 58 Fed. (2d) 463, wherein the collector had relied on proration of earnings and taxpayer was required to make an *affirmative* showing that

the *actual* earnings prior to distribution were insufficient to cover it, and was not permitted to prorate receipts and expenditures throughout the year where they were not ascertainable from the books. As to such effort, the court said: "The compilation being in part an approximation of the monthly earnings does not reflect the *actual* monthly earnings. * * * The compilation does not show the *actual* earnings of the Woolworth Company during the year 1917, prior the payments of the dividends, and manifestly the plaintiff cannot make such a showing, as the official of the company who made the compilation stated that *the company had no complete records of any kind from which monthly earnings could be accurately calculated.*" (Italics supplied.) In *Acme Manifolding Co.*, 24 B. T. A. 429, the Commissioner apportioned earnings, and we upheld the respondent's determination, and though section 201 (e) of the Revenue Act of 1918 and section 201 (f) of the Revenue Act of 1921, were in effect, we refused to approve petitioner's attempted proration of yearly sales and profits on a ratio of profits to gross sales.

*Harry A. Moody*, 9 B. T. A. 631, involved dividends paid January 10 and February 1. Evidence showed that business was at its lowest ebb during the first part of the year, that inventories were taken only at the end of the year, and that the heavy expense was not determinable until that time. The Commissioner apportioned the yearly net earnings. We said:

The petitioner has not submitted sufficient evidence to convince the Board that the company did not have sufficient current profits for the year 1917 on the dates when the dividends were paid out of which to pay them. The company made no attempt to determine its current earnings *on the several dates* and nothing has been proved in this proceeding which would indicate what the profits for 1917 on these dates were or that the earnings available were less than the amount determined by the Commissioner. In the absence of proof of a better method of determining the available current profits the Commissioner's method must be accepted by the Board. * * * [Italics supplied.]

We understand petitioner to rely largely upon *Atlas Tack Co.*, 12 B. T. A. 3, and *Continental National Bank & Trust Co., Executor*, 20 B. T. A. 829. The first was, however, not a case of prorating losses, and involved reduction of invested capital. We think it not helpful on the present problem. In *Continental National Bank & Trust Co., Executor, supra*, the petitioner having closed its books on June 30 and December 31, and showing a net loss for the six months ending June 30, but a net profit for the year, from profit in the remainder of the year, this loss was prorated to absorb the amounts paid in dividends at certain dates prior to June 30. Without discussion or citation of authority, referring to loss on the first half and profit on the last half of the year, it was "assumed, in the absence of evidence to the contrary, that the above loss and profit accrued

ratably during the respective periods." Apparently the only issue presented in the *Continental* case (except for an alternative theory not here pertinent) was as to whether the theory that a net profit for the entire year greater than the distributions raised a conclusive presumption that all distributions were from current earnings or profits—as held by the Circuit Court, but denied by the Supreme Court, in *Mason* v. *Routzahn, supra*. Respondent obviously did not rely as he does herein either upon a presumption from his determination that in *fact* current earnings and profits were available at the date of each distribution made, or upon any evidence to disprove ratable incurrence of loss. The case has not since been followed by us, save for one obvious miscitation. It is the only case we find of proration of losses to determine avails for distribution, and since the determinative issue herein was not there presented, since it is not consonant with either *Mason* v. *Routzahn, supra,* or the other cases by the Board above set forth, in particular *Acme Manifolding Co., supra,* a later case, as well as *Donahue* v. *United States, supra,* which do involve the present question, we think the *Continental* proceeding is not controlling in the instant case. See also *Norwich Woolen Mills Corporation,* 18 B. T. A. 303; *Paso Robles Mercantile Co.,* 12 B. T. A. 750; *Peter W. Rouss,* 4 B. T. A. 516.

Another reason appears, we think, why petitioner's idea of prorating losses appearing at the year's end does not suffice to prove that there were no avails for distribution at any time during the year. Petitioner's witness, testifying as to the methods of finance and accounting by Straight Securities Corporation, and necessarily referring to it since otherwise the testimony would have been without point, said that in a corporation of this nature there is a generally recognized practice, toward the close of the year, to review the results of securities sales during the year, ascertain whether there had been gain or loss, and decide which securities to sell, for the reason that it would not be fair to a corporation to pay income taxes on capital gains while suffering losses in other securities realizable only by selling the securities and offsetting the previous gains. Though such loss-taking, even for tax purposes, is held legitimate in proper cases, nevertheless it is plain that upon the present question of earnings and profits at earlier dates throughout the year, a presumption herein that there are not such losses, but that the year's net loss is to be prorated throughout the year, would be contrary to fact and should not be entertained. The evidence of the practice applies generally to 1934 as well as 1932 and 1933, and the income tax returns for 1932 and 1933 tend to bear out this practice, for in general the greater losses appear in the latter part of each year.

In *Norwich Woolen Mills Corporation, supra,* respondent prorated the income from the year's operations and we refused to approve a proration by petitioner including later losses not affecting that fraction of the year which was involved.

We hold that the petitioner herein has not met her burden of proof and has not shown error by the respondent as to the determinations of deficiency, in so far as same depend upon the amounts of current earnings and profits available for distribution.

In addition, as to the years 1932 and 1933, only, respondent by evidence affirmatively demonstrated that the losses were not incurred ratably over the year. The income tax returns of the corporation for 1932 and 1933 were introduced in evidence. That for 1932 shows the corporation claiming a net loss of $436,429.78 by virtue of sale of securities in February. Since petitioner herself on brief only claims a total loss for the year of $1,570,893.32, it is obvious that by her own computation more than one-fourth of the year's loss was incurred in February. The return also shows that there was no loss in January. The business of the corporation was "investing in stocks and bonds", and losses were claimed from no other source. In 1933 the situation is in essence the same, the return showing net loss of $380,317.50 from sale of stocks in November, against a claim of only $1,051,110 losses reflected by the books for the entire year—approximately one-third of the year's loss occurring in a single month. Our question here is whether at dates of certain distributions current earnings or profits were available to cover them. Such proof, in our opinion, contradicts any theory of a presumption of ratable incurrence of a yearly net loss throughout the year, and the burden being upon petitioner, we think respondent should be, and he is, sustained on this additional ground as to the years 1932 and 1933. However, as to both of such years, respondent made detailed requests for findings of fact, itemized according to the dates of distributions, that certain amounts distributed were earnings of the year 1927, and, therefore, apparently conceded that certain amounts distributed in those years were not from current earnings or profits of the years 1932 and 1933. Analysis of the requested findings and comparison with the stipulated distributions disclose that respondent, in effect, concedes (as to 1932) that of the $43,793.80 paid by the corporation upon petitioner's income taxes $8,208.88 was not paid out of current earnings; also that $29,155.54 of distributions upon preferred stock was not paid out of current earnings or profits. But since the total amount of the distributions on preferred stock was $92,761.50 and only $41,303 is involved herein as distributed by the trusts to beneficiaries, and the date of distribution of such amounts thereof is not known, the $29,155.54 may be a part of the $51,458.50 remainder

364

of the $92,761.50 distributed, and we can not say that any admission is made that the $29,155.54 affects the $41,303 here involved, and respondent is, therefore, considered in the position of conceding that only $8,208.88 of the amounts involved is not from current income. With that exception, therefore, the Commissioner's contention that distributions were from current earnings in 1932 is sustained. As to 1933, the respondent made similar requests for findings, and is considered therefore as, in effect, conceding that $285,180.97 distributed on common stock to the petitioner and $46,838.07 distributed on preferred stock to the trusts set up by petitioner was not from current income. The amounts considered conceded to be not from current earnings are divided as between common stock and preferred stock, except as to distribution of January 3, 1933, and as to it we have divided between common stock and preferred stock the amount considered conceded not current earnings in the ratio the amounts distributed bore to each other. However, the $46,838.07 conceded as not from current income (out of $95,544 distributed on preferred stock), may in part not be out of the $54,790 here involved as received by the beneficiaries of the trusts holding the preferred stock, but may in part be from the remaining portion of the $95,544 distributed to the trust, and not here involved, i. e., $40,754, and is only to the extent of $6,084.07 (the difference between $40,754 and $46,838.07) identifiable as concededly not from current earnings. We, therefore, hold that of the $54,790 here involved as from preferred stock, only $6,084.07 is conceded to be not from current earnings, and hold that amount and the item of $285,180.97 to be not from current income of the taxable years. As to the remainder of the $46,838.07, i. e., $40,754, we approve respondent's contention that distributions were from current earnings.

(III) As above seen, the respondent relies only in part upon the burden of proof and upon the showing that loss was not ratably incurred to sustain his determination, as to the years 1932 and 1933. As to the remainder of the amounts involved for those years, he asks finding that in certain amounts the distributions were from earnings and profits of 1927, contending that this was the first year in which "most recently accumulated earnings or profits" can be found available for dividends, that in that year such funds are found in a fund of $1,021,961.66, which petitioner did not report, and that, therefore, distribution therefrom is not tax free. Obviously, if 1927 is the nearest previous year disclosing "most recently accumulated earnings or profits", and petitioner did not report for such year the entire net income, under section 220 (e), Revenue Act of 1926, distribution to her in 1932 and 1933 of such earnings and profits is not tax-exempt, since she relies upon section 220 (e), later section 104 (d), which grant exemption of earnings and profits from the *year of report*. That the fund of $1,021,961.66 was

not reported by her in 1927 is not denied. She reported slightly less than the net income as defined by section 104 (c) in 1928, and the parties do not disagree that there were no earnings or profits of 1931 available for the distributions made in 1932, 1933, and 1934. The petitioner's contention is that the distributions were from the years 1929 and 1930 when she did report the entire corporate net income as defined by section 104 (c); to which respondent counters that under the language of section 104 (d) the amount available in 1929 and 1930 for dividends is to be considered diminished by the amount included by petitioner in her income tax return as sole stockholder, since the statute provides that: "Any amount so included in the gross income of a shareholder shall be treated as a dividend received." He argues that the deduction of such reported amount from the earnings and profits of 1929 and 1930 reduces the amount available for dividends and leaves less available than the amount of distributions received by petitioner in 1932, 1933, and 1934, and that she must therefore find amounts available for dividends in the year 1927. We think this view overlooks the clear intent and language of the statute. The intention is stated, page 22 of the Finance Committee Report on section 220 (e) of the Revenue Act of 1926:

The Committee recommends the addition of a provision that the tax shall not apply in any year if all the stockholders include in their gross income, and pay surtax upon, their entire distributive share, whether distributed or not, of the earnings of the corporation for such year. If the surtax is thus paid the failure to distribute the earnings has not resulted in any avoidance of tax and the reason for the imposition of the 50 per cent tax on the corporation no longer exists.

Since the petitioner reported and paid tax in accordance with the above, we think the intendment of the statute has been satisfied, and that Congress did not intend to go further and make special provision as to effect of report and payment of tax upon amounts available for future distributions. The statute does in effect state that the amount included in gross income shall be treated as a dividend *received*. It does not say dividend *paid*, and we think it means only that it is to be considered received so far as the taxpayer, her report and payment of income tax, is concerned, and that the language does not justify respondent's view that amounts reported constitute distributions made, for the purpose of diminishing amounts available for future distribution. Such a view nullifies the intent of the statute, preventing the taxpayer *at any time* subsequently receiving the same amounts tax free—except only in the conceivable case where the "earnings and profits" of the year of report (*all* of which, and not mere net income, is subject to claim of exemption to the extent of the amount reported, when distributed subsequently) include above the net income as specifically defined by section 104 (c), an amount

equal thereto. We think it plain that the statute was intended to procure a tax effect, the same as in case of distribution to shareholders, and was not designed to deprive the taxpayer of later tax-exempt distribution, except dependent upon such mathematical considerations, as amount of earnings and profits above net income as defined by section 104 (c). We hold that the amount reported does not, for purposes of subsequent claim of exempt distribution thereof, effect a reduction of earnings and profits available for distribution. This is not to say that the amount accumulated and reported by the taxpayer is, as petitioner argues, to be held intact for her and may not be exhausted, as by subsequent losses, prior to the time of claim of exempt distribution. If so dissipated (because by the corporation left subject to later exigencies) it would obviously not be available for later distribution, exempt or otherwise. We merely hold that the amount treated as distributed in the year of report does not merely, because of such report, cease to be available for future claim of distribution exempt from tax.

Respondent also suggests that section 104 of the 1932 Act and section 102 of the 1934 Act are not retroactive, that the provisions of the 1928 and 1926 Acts were repealed, and that, therefore, petitioner had no source of exemption for the distributions in 1932, 1933, and 1934. We can not agree. We find no repeal. Respondent cites no pertinent authority and we find none. We think the provisions involved were effective in the years here considered.

We, therefore, conclude that the years 1929 and 1930, as to which petitioner reported section 104 (c) net income, were the years of most recently accumulated earnings and profits, which were conceded not to be from the taxable years, that such earnings or profits are not to be considered diminished by the amounts reported as income by petitioner, and that as to distributions in 1932 and 1933, to the extent to which the avails for distribution are conceded by respondent not to be from earnings and profits of those years, they were from 1929 and 1930 and respondent erred in contending that they were from 1927. The amounts are, as above seen, $8,208.88 in 1932 and $285,180.97, in 1933, distributed on common stock to petitioner; also $6,084.07 distributed in 1933 on preferred stock to beneficiaries of trusts. To that extent we, therefore, hold to be tax-exempt the amounts distributed to petitioner herself in those years, i. e., $8,208.88 and $285,180.97. This does not apply to the year 1934, all of the income of which is held not to be shown accumulated from other than that year.

IV. The next question requiring our consideration is as to taxability of the $6,084.07 above referred to which was distributed in 1933 by Straight Securities Corporation upon preferred stock owned by trusts created by petitioner and paid to the beneficiaries thereof, which

funds are not denied to have been used for the maintenance, education, and support of petitioner's children. Petitioner concedes that such payments satisfied legal obligations of the petitioner, and relies upon the thought expressed in *Jay C. Hormel, supra,* to the effect that in the absence of a requirement in the trust instrument that the income should be used for the support, maintenance, or education of a child, the trustor is not taxable thereon under the general doctrine of *Douglas* v. *Willcuts, supra.* She says there is no such mandate in the trust instrument here involved. We can not so agree, and find a situation different from that in *Jay C. Hormel, supra.* There the trust was merely for "the use and benefit" of minor children, with no mention of maintenance, education, or support. Herein, each trust specifically provides, as to the child named as beneficiary, that the trustees are to hold, manage, invest, etc., "and to pay to the Beneficiary, or apply to his education, maintenance and support, the net rents, * * * as the Trustees in their discretion may deem proper." Later the instrument provides: "The trustees are directed to pay over the net income of all trusts hereby created at least quarterly, unless otherwise herein specifically provided"; and there is therein no specific or other provision to the contrary. Thus there is a *mandate* to pay, or to apply upon education, support, or maintenance, limited only by trustees' discretion. Discretion in trustee did not prevent application of *Douglas* v. *Willcuts, supra,* in *Alfred C. Berolzheimer,* 40 B. T. A. 645. We conclude and hold that the doctrine of *Douglas* v. *Willcuts, supra,* applies to the distributions by the trusts.

Petitioner contends, however, that notwithstanding the principles of *Douglas* v. *Willcuts, supra,* the funds were received by *her* in 1933 from corporate gains and profits of 1929–1930, in which years report was made by her under section 104 (d), and that, therefore, the exemption applies. She argues that the test of exemption is identity of the recipient of the distribution and the person who previously reported the earnings; while respondent contends that herein the stockholders receiving the distributions in 1932, 1933, 1934 were not in existence when the earnings were reported, that the distributions were not made to stockholders who in the statutory expression had "so included in their gross income" any part of the earnings and profits later distributed, and that, therefore, the exemption does not apply. Was petitioner, who reported the income, the distributee of the distributions in later years? We think she was. In *Mead Corporation,* 38 B. T. A. 687, we held that the stockholders of a corporation which owned all of the stock of a second corporation were the stockholders of the second corporation within the meaning of section 104 of the Revenue Act of 1928 and subject to the penalty thereby prescribed.

Here a trust, instead of a corporation, owned the corporate stock. Petitioner, as trustor, we hold above to be taxable upon the income of that trust (so far as here involved), because by *Douglas* v. *Willcuts*, *supra*, she is in effect to that extent put into the position of the trust. Petitioner is charged with the income distributed by the corporation; she is thus in effect made the distributee. She can not, therefore, logically be denied the position of distributee under section 104 (d). The word "distributee" therein is not a narrow term. We think it includes petitioner, just as in *Mead Corporation*, *supra*, the words "its stockholders" applied to recipients of dividends from a corporation entirely owning another, the source of the distributions. We, therefore, hold that the petitioner is under section 104 (d) of the Revenue Acts of 1928 and 1932 (section 102 (d), Revenue Act of 1934), entitled to exemption of the $6,084.07 distributed to her children as beneficiaries under the trust set up by her.

V. The deficiency for 1934 arose in part because of the disallowance of a contribution of preferred stock of a fair value of $4,000,000 to an alleged charitable trust. Though earlier suggesting that the trust was revocable, upon brief, respondent abandons his previous position and urges only that it is subject to the limitation of 15 percent of *gross* income. We, therefore, allow the contribution, to the extent of 15 percent of petitioner's net income (less the amounts of other charitable deductions allowed). It is stipulated that the petitioner had not made gifts or contributions in each of the 10 preceding years such as to bring her within the provisions of section 120 of the Revenue Acts of 1932 and 1934, removing the 15 percent limit set by section 23 (o) upon contributions. Contributions as to the years 1932 and 1933 are also allowed, only to the extent of 15 percent of the net income as redetermined in accordance with the above.

Petitioner suggests that if held liable for tax on any distributions of earnings reported in prior years, she is entitled to set off the Federal income taxes paid by her on account of such prior inclusion of earnings. We do not hold her to be taxable upon distributions of such reported earnings, but upon later earnings, not reported.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

Opper concurs only in the result.

———

Leech, concurring: I disagree with the necessity for and the conclusion expressed in the majority opinion that petitioner is taxable on the income from the trusts created for the benefit of her minor children.

The trusts were irrevocable and authorized the trustees to pay the income to each child outright, without restriction as to its use, *or*, in their discretion, to use it for the education, maintenance, and sup-

port of the children. There was thus, I think, no mandate to but only a discretion in the trustees to apply the income to the legal obligation of the petitioner of supporting her minor children.

The question, then, is whether any part of such income was taxable to the petitioner, settlor. The decisions of the courts and the Board do not seem to support a consistent answer to the query. *Hudson* v. *Jones*, 22 Fed. Supp. 938; *E. E. Black*, 36 B. T. A. 346; *Martin F. Tiernan, Trustee*, 37 B. T. A. 1048; dismissed without opinion, C. C. A., 3d Cir., June 12, 1939; *J. S. Pyeatt*, 39 B. T. A. 774; *Alfred C. Berolzheimer*, 40 B. T. A. 645; *Jay C. Hormel*, 39 B. T. A. 244. See also G. C. M. 18972, C. B. 1937-2, p. 231. In *Douglas* v. *Willcuts*, 296 U. S. 1, the Supreme Court held that income of a trust is taxable to a grantor, as constructively received by him, where the application of the trust income to a legal obligation of the settlor is *mandatory*. But that decision goes no further. It does not reach the case where such application is discretionary in the trustee. See also *Helvering* v. *Fitch*, 309 U. S. 149. Unless, therefore, this theory that may be called constructive receipt which supports the *Douglas* v. *Willcuts* decision, is applied in construing sections 167 (a) (2) of the Revenue Acts of 1932 and 1934, I see no legal ground for taxing any of such income to the petitioner, regardless of the fact that it was used to meet her obligation. See *Hoeper* v. *Wisconsin*, 284 U. S. 206; *Frederick K. Barbour*, 39 B. T. A. 910; *Estate of Paul F. Donnelly*, 38 B. T. A. 1234 (on appeal C. C. A., 8th Cir.); *George Washington, Sr.*, 36 B. T. A. 74. If section 167 (a) (2) can be so construed, then, it seems to me, all of such income is taxable to petitioner, whether the trustees were the settlors or third parties. *Reinecke* v. *Smith*, 289 U. S. 172. And that is true, under the unambiguous meaning of the section, whether or not any of the income was so used.

Can this doctrine of constructive receipt be applied in the construction of section 167 (a) (2)? I think not. The Commissioner apparently does not think so either. See G. C. M. 18972, *supra*. To so apply it would seem to be an unwarranted disregard of the trust entity. *Estate of Paul F. Donnelly, supra; George Washington, Sr., supra; Frederick K. Barbour, supra.* If Congress had meant to have this theory applied generally in the construction of section 167, it would seem that it would have said, simply, that the income of a trust should be taxed to the settlor when it could be applied against *any* legal obligation of the settlor. But nothing in section 167 indicates such an intent. In fact, an intention to limit the application of this rule of constructive receipt to those cases, only, where the income can be used for the payment of premiums on policies of insurance on the life of the settlor, seems to be disclosed by the fact that the section specifically taxes such income to the settlor. See section 167 (a) (3). *Expressio unius est exclusio alterius.*