CROWN ZELLERBACH CORPORATION, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101161, 101162, 101163, 101164, 101165, 101166, 101167, 101168, 101169, 101170.

Promulgated February 11, 1941.

*Douglas Erskine, Esq.*, for the petitioners.
*Arthur L. Murray, Esq.*, for the respondent.

#### OPINION.

STERNHAGEN: The Commissioner determined deficiencies in income tax for the taxable year ended April 30, 1937, as follows:

| | |
|---|---|
| Avalon Paper Co | $443. 80 |
| The Sanitary Products Corporation | 1, 690. 06 |
| National Paper Products Co | 100, 160. 43 |
| Western Waxed Paper Co. of California | 13, 245. 66 |
| Washington Pulp & Paper Corporation | 70, 692. 34 |

He also determined the liability of Crown Zellerbach Corporation for each deficiency as a transferee of the taxpayer.

The proceeding raises two questions. The Commissioner disallowed (1) any dividends paid credits in respect of amounts distributed in complete liquidation; (2) deductions claimed by three of the

[1] Proceedings of the following petitioners are consolidated herewith: Avalon Paper Company; Washington Pulp & Paper Corporation, and J. D. Zellerbach, I. Zellerbach, M. M. Baruh, Philip S. Ehrlich, D. J. Goldsmith and H. L. Zellerbach, as Trustees; National Paper Products Company; Western Waxed Paper Company of California; The Sanitary Products Corporation, and J. D. Zellerbach, H. L. Zellerbach, R. A. MacDonald, E. A. Breyman and D. J. Goldsmith, as Trustees.

petitioners for real and personal property taxes. The facts have been stipulated.

1. During the fiscal year ended April 30, 1937, each of the five transferor petitioners was completely liquidated and delivered all its assets, including its entire earnings and profits for the fiscal year, to a corporation which owned all its stock. The Crown Zellerbach Corporation owned all the stock of the Avalon Paper Co., Sanitary Products Corporation, and National Paper Products Co. It owned all the stock of Crown Willamette Paper Co., which in turn owned all the stock of the Western Waxed Paper Co. of California, and it owned all the stock of the Olympic Paper & Power Co., which in turn owned all the stock of the Washington Pulp & Paper Corporation. The liquidating corporations during the fiscal year authorized or made no other distributions than the transfers in liquidation. The corporations which received the assets and surrendered the entire issued and outstanding shares treated the transfers in liquidation as distributions in respect of which no gain or loss was to be recognized (Revenue Act of 1936, sec. 112 (b) (6)), and they so accounted for the transfers on their books and in their Federal income tax returns.

Each of the liquidating corporations, in its Federal income tax return, claimed a dividends paid credit to the full extent of its adjusted net income for the fiscal year, and the respondent has refused any credit.

At the time of the liquidation, April 30, 1937, the earnings or profits of the Avalon Paper Co. accumulated after February 28, 1913, were $5,615.34, and the Sanitary Products Corporation showed a deficit of $177,346.40. At the time, July 31, 1936, of the liquidation of the National Paper Products Co., Washington Pulp & Paper Corporation, and Western Waxed Paper Co. of California, the earnings or profits of each accumulated after February 28, 1913, were not less than its adjusted net income for the fiscal year ended April 30, 1937.

The parties have agreed that the Crown Zellerbach Corporation is liable as transferee of each of the five transferor petitioners for any unpaid Federal income tax, with interest, due for the fiscal year.

The first question is whether, in the determination of their undistributed net incomes for the fiscal year, the five transferor petitioners are entitled to dividends paid credits under section 27, Revenue Act of 1936, in connection with their distributions in complete liquidation.

The same question was decided favorably to the taxpayer in *Credit Alliance Corporation*, 42 B. T. A. 1020. Here each of the five corporations claimed a dividends paid credit to the full extent of its adjusted net income for the fiscal year. In the case of the Na-

tional Paper Products Co., Washington Pulp & Paper Corporation, and Western Waxed Paper Co. of California, they had the requisite accumulated earnings and profits under the statute. The earnings or profits of the Avalon Paper Co. accumulated after February 28, 1913, at the time of its distribution in liquidation, were $5,615.34. Its adjusted net income for the fiscal year ended April 30, 1937, was $5,709.11. The dividends paid credit of that corporation must, under section 27 (f), be limited to $5,615.34.

The Sanitary Products Corporation at the time of its liquidation had no earnings or profits accumulated after February 28, 1913, but a deficit of $177,346.40, and is, therefore, under section 27 (f), entitled to no credit.

2. For the calendar year 1936, the State of Washington imposed $34,106.16 real and personal property taxes on the National Paper Products Co. and $57,722.78 on the Washington Pulp & Paper Corporation, and the State of Oregon imposed $1,725.89 such taxes on the Western Waxed Paper Co. of California. The State of California imposed on the Western Waxed Paper Co. of California $6,449.56 real and personal property taxes for the fiscal year ended June 30, 1936, and $7,453.05 such taxes for the fiscal year ended June 30, 1937.

All three corporations kept their books of account on the basis of a fiscal year ending April 30 and used an accrual method of accounting.

The taxes imposed by Oregon and Washington became a lien on the first of March of the calendar year in respect of which they were imposed. The taxes imposed by California became a lien on the first Monday of March preceding the fiscal year in respect of which they were imposed.

The question is, which is the proper year for the deduction of real and personal property taxes paid by these three petitioners. They contend that they are entitled to deduct the taxes in accordance with their own accounting; which means that in their fiscal year ended April 30, 1937, they may deduct so much (one-third) of the Oregon and Washington taxes of the calendar year 1937 as is proportionately attributable to the first four months of that year, since those four months fall in petitioners' fiscal year, and so much (ten-twelfths) of the California taxes of the state fiscal year ended July 1, 1937, as is proportionately attributable to the first ten months of that year, since those ten months fall in petitioners' fiscal year. The respondent takes the lien date of each state—March 1, 1937, in Oregon and Washington, and the first Monday in March 1937, in California—and, treating the taxes as accrued on that date, requires the deduction in petitioners' fiscal year ended April 30, 1937, of the year's taxes which accrued on those lien dates in the respective states.

Petitioners regularly accrued their property taxes on a monthly basis. Such a method of accrual was upheld in *Godfrey L. Cabot, Inc.*, 40 B. T. A. 366, but that case is distinguishable, since under the law of West Virginia there was no lien. *Carondelet Building Co.* v. *Fontenot*, 111 Fed. (2d) 267, reversing 28 Fed. Supp. 656, involves taxes of Louisiana, where there was no lien. *S. E. and M. E. Bernheimer Co.*, 41 B. T. A. 249 (on review, C. C. A., 2d Cir.), involved New York taxes and the lien date was held not controlling. See also *Lowell H. Chamberlain*, 43 B. T. A. 259, involving Iowa real property taxes paid by a devisee on the cash basis.

Taxes in Oregon have been held to accrue on March 1, when the lien attaches, *Crown Willamette Paper Co.*, 14 B. T. A. 133; *Gatens Investment Co.*, 36 B. T. A. 309; *T. H. Banfield*, 42 B. T. A. 769, and taxes in California have been held to accrue on the first Monday in March, when the lien attaches, *California Sanitary Co., Ltd.*, 32 B. T. A. 122. Following those decisions, the petitioners' contention as to Oregon and California must be rejected.

In *Grand Hotel Co.*, 21 B. T. A. 890, it was held, following *Crown Willamette Paper Co.*, *supra*, that property taxes in Washington accrue on March 1, when the lien attaches. In *Theodore Plestcheeff*, 35 B. T. A. 508; affd., 100 Fed. (2d) 62, it was held that taxpayers on a cash basis, acquiring property by devise on April 5, 1931, were entitled on their income tax returns for 1932 to deduct taxes paid on the property in 1932. The Board relied on Washington cases holding that there could be no valid or effective lien for a tax until there is a valid tax in some specific amount. The Board stated:

In our opinion, the taxes assessed on real estate for the year 1931 did not, under the statutes of Washington as construed by its courts, attach and become a perfected lien on said realty prior to October 1931, in which month the tax levy is made in that state.

*Grand Hotel Co.*, *supra*, and *Crown Willamette Paper Co.*, *supra*, were distinguished on the ground that in them it was not necessary to determine when, in the year of assessment and levy, the taxes became a lien. In *Arcade Department Store, Inc.*, 18 B. T. A. 1172, taxes paid in 1919 and 1920 were held to have accrued in 1918 and 1919, and the case was distinguished, on the ground that it involved, as did the *Crown Willamette* case, personal property taxes.

The Circuit Court of Appeals for the Ninth Circuit, in affirming the Board's decision in the *Plestcheeff* case, emphasized the Washington statutory provision that as between grantor and grantee the lien should not attach until the following February. The court held that the terms grantor and grantee might properly be applied to a devisor and devisee. One judge dissented on the ground that the principal Washington case relied upon by the Board involved property which was in private ownership on March 1, but in public

ownership when the taxes were levied. He also disagreed with the conclusion that the term grant includes a devise.

In *Carl K. Lifson*, 36 B. T. A. 593; affd., 98 Fed. (2d) 508; certiorari denied, 305 U. S. 662, involving a Minnesota statute similar to that of Washington, the Board distinguished the *Plestcheeff* case on the ground that the Washington statutes had been construed by Washington courts to different effect from the Minnesota law, since under Washington law the lien became perfect at a date later than the one corresponding to May 1 in the Minnesota law.

In *T. H. Banfield, supra*, involving Oregon law, the *Plestcheeff* case was distinguished on the ground that the Washington statute provided that "as between a grantor and a grantee such lien shall not attach until the first Monday in Feburary of the succeeding year," whereas the Oregon statute set no date for the tax lien in the case of a grantor and grantee. The Board in the *Banfield* case said nothing of the October levy date which had been emphasized in the *Plestcheeff* case, but relied on *Gatens Investment Co., supra*, and *Carl K. Lifson, supra*. The *Banfield* opinion indicates that in Washington the February date is the important one in a grantor-grantee situation, and this includes the case of a devise.

The instant case does not involve a grantor-grantee situation and must be distinguished from the *Plestcheeff* case on that ground. *Grand Hotel Co., supra*, and *Crown Willamette Paper Co., supra*, holding that in Washington, for Federal income tax purposes, the accrual date is March 1, when the lien attaches, must be followed.

The respondent's disallowance of deductions for taxes paid to all three states is sustained.

*Decision will be entered under Rule 50.*