INLAND INVESTORS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100784. Promulgated June 5, 1941.

*I. W. Sharp, Esq.,* for the petitioner.
*Thomas F. Callahan, Esq.,* for the respondent.

## OPINION.

HARRON: The question arises under section 27 (h) of the Revenue Act of 1936.[1] The problem arises in the following way: There is no issue raised as to whether or not under the statute petitioner had a surplus or accumulated earnings and profits at the beginning of 1936. The earned surplus account, computed on the basis of the results of operations and dividend payments since petitioner's organization, without credit for paid-in surplus or capital surplus and without debits for book write-downs from cost of securities still held, shows a deficit of $1,918,966.95 at the end of 1935 in the earned surplus account. The parties have so stipulated. It appears that the stipulation is made with cognizance of applicable law. See *F. J. Young Corporation*, 35 B. T. A. 860; affd., 103 Fed. (2d) 137. As of the beginning of 1936 petitioner had a substantial deficit in its earned surplus account and thus had no earnings or profits accumulated after February 28, 1913.

The respondent has determined that petitioner's earnings and profits for the taxable year were $80,751.64 and has held that the distributions which were made in excess of that amount constituted

---

[1] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

(a) DIVIDENDS PAID CREDIT IN GENERAL.—For the purposes of this title, the dividends paid credit shall be the amount of dividends paid during the taxable year.

\* \* \* \* \* \* \*

(h) NONTAXABLE DISTRIBUTIONS.—If any part of a distribution (including stock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part.

a partial return of capital to petitioner's stockholders. The excess of $44,248.36 has been determined by respondent to be a nontaxable distribution in the hands of petitioner's stockholders and, therefore, he has disallowed a dividends paid credit with respect to that amount of the distributions under section 27 (h). Petitioner does not contend that part of the distributions were not nontaxable and in the petition to this Board petitioner states its claim to be that "it should not be subject to a surtax on undistributed profits even though a part of the amount distributed was not taxable to the stockholders as dividends." It thus appears that petitioner is unable to overcome, and has not overcome, the determination of the respondent that a part of the distributions made in 1936 was nontaxable in the hands of its stockholders. Upon this state of the pleadings and the record there can not be any other holding than that no dividends paid credit is allowable under section 27 (h) with respect to the distributions amounting to $44,248.36, and respondent must be sustained.

It would appear that no discussion of the problem is required, but petitioner's broad claim is that the result, which appears to be dictated by the fact that part of the distribution was a nontaxable distribution, is contrary to the seeming purpose of the undistributed profits tax, which petitioner believes is to bring about distribution within a taxable year of all of the income for the year as the term income is commonly understood. And, petitioner argues, since it distributed all of its income and profits it should not be subject to any of the tax called "surtax on undistributed profits." However, Congress has not provided that a dividends paid credit shall be allowed under sections 14 and 27 for the entire amount of every distribution to stockholders. Section 27 (h) clearly excludes from an allowable dividends paid credit that part of a distribution which is nontaxable in the hands of the stockholders. The only question at issue here is whether or not respondent has properly determined the amount of the distribution which was nontaxable, petitioner apparently conceding that part of the distribution was nontaxable.

First, an explanation should be made of the way in which respondent has determined the amount of the allowable dividends paid credit. That determination appears to have been made correctly and the explanation thereof in itself determines the issue. In our opinion the term "dividends" used in section 27 can not have a different meaning from the term "dividends" as defined in section 115 (a).[2]

---

[2] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDENDS.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Petitioner had no earnings or profits accumulated after February 28, 1913. This leaves for consideration the question whether petitioner's "earnings or profits of the taxable year" were in the sum of $125,000 or were in some other sum. Petitioner could not distribute out of "earnings or profits", as that phrase is construed for income tax purposes, an amount in excess thereof. What, then, was the amount of petitioner's "earnings or profits of the taxable year"?

It seems unnecessary to point out that "taxable net income" is not equivalent to "earnings or profits of the taxable year." See *Charles F. Ayer*, 12 B. T. A. 284; *R. M. Weyerhaeuser*, 33 B. T. A. 594. Petitioner's taxable net income was $124,934.58. In order to arrive at the amount of petitioner's "earnings or profits of the taxable year", to determine whether or not the entire amount of petitioner's distributions was made out of "earnings or profits of the taxable year" within section 115 (a) (2), respondent took into consideration the amount of petitioner's nondeductible net capital losses, $43,541.42, and the amount of petitioner's normal tax liability, $641.52, and he deducted the total, $44,182.94, from taxable net income, $124,934.58. He held that the remainder, $80,751.64, was the amount of petitioner's "earnings or profits of the taxable year."

Respondent's determination is correct because, under the ordinary method of accounting, in the computation of petitioner's "earnings or profits of the taxable year" it is necessary to give effect to the amount of its net capital losses sustained in the taxable year and disallowed as a deduction under section 117 (d) and the amount of its liability for normal tax, even though these amounts are not deductible in the computation of its taxable net income. *Commissioner v. James*, 49 Fed. (2d) 707; *Dorothy Whitney Elmhirst*, 41 B. T. A. 348, 354; I. T. 3253, C. B. 1939–1, p. 178. Accordingly, the distributions made by petitioner in 1936 were "dividends" within the definition of section 115 (a) only to the extent of $80,751.64. In allowing petitioner a dividends paid credit under sections 14 and 27 in that amount, respondent has allowed a credit to petitioner on the basis of its having distributed all of its "earnings or profits of the taxable year."

There is no evidence in the record to show that the part of the distributions which exceeded $80,751.64 was a distribution in partial liquidation, as suggested by petitioner in its brief (see section 115 (i) of the Revenue Act of 1936) ; and even if that were true, which it is not, it is clear that the part of the distributions which exceeded $80,751.64 was not "properly chargeable to the earnings or profits accumulated after February 28, 1913" and thus in any event could not be a "taxable dividend" within the meaning of section 27 (f) of the Revenue Act of 1936. Cf. *Credit Alliance Corporation*, 42 B. T. A. 1020; *Crown Zellerbach Corporation*, 43 B. T. A. 541. The con-

clusion is inescapable that the part of the distributions made by petitioner to its stockholders which exceeded $80,751.64 constituted a partial return to the stockholders of their capital investment and thus was not a taxable dividend in their hands. Petitioner recognizes that this is correct under the statute. See section 115 (d) of the Revenue Act of 1936.

Since under section 115 (a) petitioner's distributions in 1936 constituted taxable dividends only to the extent of $80,751.64, and since the balance of the distributions, $44,248.36, did not constitute taxable dividends in the hands of the distributees, no dividends paid credit is allowable for the latter amount under section 27 (h). Respondent is sustained.

While it is not necessary to extend the discussion further, answer should be given to petitioner's main argument, which is that it is not subject to the so-called "undistributed profits" surtax because the total amount of the distributions made by it to its stockholders ($125,000) exceeded the amount of its taxable net income ($124,934.58) and the amount of its profits ($80,751.64). It argues that it was not the legislative intent to subject a corporation which has distributed all its profits to the so-called "undistributed profits" surtax. (Petitioner uses the term "profits" in some other sense than the term means in section 115 (a).)

Section 14, the pertinent provisions of which are set forth in the margin,[3] in very plain language states that the surtax is to be imposed on "net income." In its context the section refers repeatedly to "net income", "adjusted net income", and "undistributed net income." The ordinary and plain meaning of *net income* for tax purposes is quite different from the ordinary and plain meaning of profits; and in a given year a corporation may have profits in a lesser or greater amount than its net income for tax purposes. *Commissioner* v. *James, supra; Charles F. Ayer, supra; R. M. Weyerhaeuser, supra.* It is true

---

[3] SEC. 14. SURTAX ON UNDISTRIBUTED PROFITS.

(a) DEFINITIONS.—As used in this title—

(1) The term "adjusted net income" means the net income minus the sum of—

(A) The normal tax imposed by section 13.

(B) The credit provided in section 26 (a), relating to interest on certain obligations of the United States and Government corporations.

(C) In the case of a holding company affiliate (as defined in section 2 of the Banking Act of 1933), the amount allowed as a credit under section 26 (d).

(D) In the case of a national mortgage association created under Title III of the National Housing Act, the amount allowed as a credit under section 26 (e).

(2) The term "undistributed net income" means the adjusted net income minus the sum of the dividends paid credit provided in section 27 and the credit provided in section 26 (c), relating to contracts restricting dividends.

(b) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year upon the net income of every corporation a surtax equal to the sum of the following, subject to the application of the specific credit as provided in subsection (c) :

7 per centum of the portion of the undistributed net income which is not in excess of 10 per centum of the adjusted net income.

*     *     *     *     *     *     *

that section 14 is entitled "Surtax on Undistributed Profits." However, the title can not limit the plain meaning of the context of the statute. *Strathearn Steamship Co.* v. *Dillon*, 252 U. S. 348; *Lapina* v. *Williams*, 232 U. S. 78; *Cornell* v. *Coyne*, 192 U. S. 418; *Patterson* v. *Bark Eudora*, 190 U. S. 169. Also, undistributed net income, on which the surtax is based, is purely a statutory concept. It is computed by subtracting from net income and adjusted net income certain special tax exemptions in the form of deductions or credits. The special tax exemptions are enumerated very clearly and carefully in section 14. It is clear that Congress has not provided any special tax exemption which affords petitioner full relief from the surtax under present circumstances.

Congress could have provided for full relief under the present circumstances by allowing in the computation of "adjusted net income" under section 14 a deduction from net income in the amount of the net capital losses disallowed as a deduction by section 117 (d).[4] For example, in the Revenue Act of 1936 Congress allowed a deduction from net income in the amount of net capital losses disallowed as a deduction by section 117 (d) both in the computation of "special adjusted net income" under section 102 (surtax on corporations improperly accumulating surplus) and in the computation of "adjusted net income" under section 351 (surtax on personal holding companies).[5] The deduction for disallowed net capital losses under section 351 appears in the 1934 Act as well as in the 1936 Act. But the deduction for disallowed net capital losses under section 102 appears for the first time in the 1936 Act. In all, section 102 provides for deductions from net income of five specific items, including disallowed net capital losses, and section 14 provides for deductions from net income of four specific items. The last two items allowed as deductions from net income under section 102 are identical with the last two items allowed as deductions from net income under sec-

---

[4] In its report on the Revenue Bill of 1936 the Ways and Means Subcommittee recognized that circumstances might arise substantially similar to the present circumstances and recommended that certain relief be provided for under such circumstances. Report of the Subcommittee of the Committee on Ways and Means, March 26, 1936, 74th Cong., 2d sess., pp. 6–7. However the Subcommittee did not recommend full relief through the allowance of a deduction from net income in the amount of the net capital losses disallowed as a deduction by section 117 (d). The Subcommittee recommended only partial relief through the imposition of a flat rate surtax on "the excess of the adjusted net income over the accumulated earnings and profits as of the close of the taxable year." As it passed the House, the Revenue Bill of 1936 embodied in section 14 the recommendations of the Subcommittee. The Senate struck out section 14, and no provisions affording even partial relief under present circumstances were restored. The vital fact is that, even if the recommendations of the Subcommittee had been embodied in the Revenue Act of 1936, petitioner would have remained subject to surtax under present circumstances although at a different rate.

[5] Section 102 (c) (1) (C) and section 351 (b) (3) (C) both provide for the following deduction from net income: "Losses from sales or exchanges of capital assets which are disallowed as a deduction by section 117 (d)."

tion 14.[6]  All of such deductions from net income under section 102 and section 14 appear for the first time in the 1936 Act. Section 14 expressly states, under subsection (f), "For surtax on personal holding companies, see section 351", and under subsection (g), "For surtax on corporations which accumulate surplus to avoid surtax on stockholders, see section 102." Such considerations compel the conclusion that the failure of Congress to allow in the computation of "adjusted net income" under section 14 a deduction from net income in the amount of disallowed net capital losses was intentional.

By way of illustrating the above possible relief which Congress could have given, but did not, reference is made to Form 1120 "Corporation Income and Excess-Profits Tax Return", lines 23 to 29, inclusive. In the situation presented here, if petitioner's "adjusted net income", as defined in section 14 (a) (1) (A), $124,293.06 ($124,-934.58—$641.52, normal tax), could have been reduced by the amount of the disallowed net capital loss, $43,541.42, the "adjusted net income" would have been $80,751.64. Then the allowable dividends paid credit of $80,751.64, deducted from "adjusted net income" would have left no "undistributed net income", and there would be no surtax.

Petitioner contends also that section 14 and related sections are unconstitutional if construed to subject it to the so-called "undistributed profits" surtax under present circumstances. The constitutionality of section 14 and related sections is attacked on two grounds. Petitioner argues that the surtax is "not a tax on incomes within the meaning of the Sixteenth Amendment to the Constitution and therefore is unconstitutional because not apportioned among the states according to population as required by Article 1, section 2 and section 9 of the Constitution"; and that the surtax violates "the due process requirement of the Fifth Amendment and would take property of petitioner without due process of law."

Neither of these contentions is valid. The surtax imposed under section 14 on petitioner's "net income" less certain specified deductions and credits is clearly "a true tax on income within the meaning of the Sixteenth Amendment." Cf. *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46; *Crane-Johnson Co.* v. *Helvering*, 311 U. S. 54. And the imposition of the surtax under the present circumstances, if arbitrary or discriminatory, appears to be no more so than the imposition of the surtax under the circumstances involved

---

[6] Section 102 (c) (1) (D) and section 14 (a) (1) (C) both provide for the following deduction from net income :

"In the case of a holding company affiliate (as defined in section 2 of the Banking Act of 1933) the amount allowed as a credit under section 26 (d)."

Section 102 (c) (1) (E) and section 14 (a) (1) (D) both provide for the following deduction from net income :

"In the case of a national mortgage association created under Title III of the National Housing Act, the amount allowed as a credit under section 26 (e)."

in the *Northwest Steel Rolling Mills, Inc.*, and *Crane-Johnson Co.* cases. In our opinion, it does not appear clearly that section 14 and related sections are unconstitutional if construed to subject petitioner to surtax under present circumstances. See *Rita O'Shaughnessy, Executrix*, 21 B. T. A. 1046; affd., 60 Fed. (2d) 235; certiorari denied, 288 U. S. 605.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

OPPER concurs only in the result.