## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* CREDIT ALLIANCE CORP.

No. 708. Argued April 7, 1942.—Decided April 27, 1942.

*Mr. J. Louis Monarch,* with whom *Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Arthur A. Armstrong* and *Archibald Cox,* and *Miss Helen R. Carloss* were on the brief, for petitioner.

*Mr. Newell W. Ellison,* with whom *Messrs. Duane R. Dills, Jack J. Levinson, Christopher S. Sargent,* and *Marion P. Wormhoudt* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The Commercial Credit Company, a Delaware corporation, acquired and owned over 99% of the capital stock of the respondent, a New York corporation actively engaged in business. In 1936 the respondent's stockholders and directors resolved to liquidate the corporation and to make distribution to its stockholders in liquidation. Part of the distribution so made in 1936 was of cash and property constituting surplus earned after Feb-

ruary 28, 1913, of the value of $950,734. Of this, Commercial Credit Company's share was $947,228. Further distributions were made in 1937, and final distribution in 1938, and the corporation was legally dissolved. The liquidation complied with the provisions of § 112 (b) (6) of the Revenue Act of 1936,[1] under which no gain or loss for tax purposes was attributable to Commercial Credit Company as a result of the distribution. That corporation did not, in 1936, distribute to its stockholders any of the distribution received by it from the respondent and did not apportion or allocate any part thereof to the respondent.

The question is, to what dividends-paid credit is the respondent entitled under the applicable sections of the Revenue Act of 1936.[2]

By § 14 there was imposed for the first time a tax upon "undistributed net income." In order to compute the base for this levy the dividends-paid credit is to be deducted from adjusted net income.

Section 27 deals with the credit for dividends paid. Subsection (a) provides that, for the purposes of Title I of the Act, the dividends-paid credit shall be the amount of dividends paid during the taxable year. Each of the additional subsections deals with a separate topic relating to the computation and allowance of the credit. The only ones here of importance are (f) and (h).

"(f) *Distributions in Liquidation.*—In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid."

"(h) *Nontaxable Distributions.*—If any part of a distribution (including stock dividends and stock rights)

---

[1] 49 Stat. 1648, 1679.

[2] §§ 14, 27, and 112, 49 Stat. 1648, 1655, 1665, 1678.

is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part."

The taxpayer insists that the distribution in question is governed by the provisions of (f). The Government asserts that it is not, for these reasons: that the phrase "which is properly chargeable to the earnings or profits accumulated after February 28, 1913" takes the distribution out of the purview of the section; that (h) denies the benefit of (f) to the taxpayer if the money or property transferred is not taxable to the distributee; that the policy of the Act, and the purpose underlying provisions other than § 27, require that (f) be not construed as permitting the credit where the distribution gives rise to no tax upon the distributee, and that an applicable regulation precludes the credit.

The Government's second contention has been sustained by the Circuit Court of Appeals for the Fifth Circuit,[3] but both the first and the second have been overruled by the Circuit Court of Appeals for the Second Circuit,[4] and by the Board of Tax Appeals and the court below in the instant case.[5] In view of the conflict, we granted certiorari.

1. Although a distribution in liquidation of earnings which accrued subsequently to February 28, 1913, does not constitute a dividend in the proper sense of the term,[6] subsection (f) categorically declares that a liquidating distribution, to the extent it is composed of such earnings, shall, for the purposes of computing the dividends-paid credit *"be treated as a taxable dividend paid."*

---

[3] *Centennial Oil Co.* v. *Thomas*, 109 F. 2d 359, Hutcheson, J., dissenting.

[4] *Commissioner* v. *Kay Mfg. Corp.*, 122 F. 2d 443.

[5] 42 B. T. A. 1020; 122 F. 2d 361.

[6] *Hellmich* v. *Hellman*, 276 U. S. 233.

Plainly the section intends that a distribution of such earnings shall be considered a dividend. Further it provides that the distributing corporation may use the amount in computing its credit for dividends paid. And, to put the matter beyond cavil, the section also says that the distribution shall be treated as the payment to the distributee of a *taxable* dividend.

The Government, however, contends that the clause "properly chargeable to the earnings or profits accumulated after February 28, 1913," means properly chargeable to the distributee as such earnings or profits. The argument has, we think, rightly been rejected by all the courts which have considered it. The line drawn in all of the revenue acts between profits accumulated before the enactment of the first income tax act and after that date, for distinguishing capital and income, furnishes the reason for the insertion of the clause in subsection (f). Section 27 deals with a credit to the distributing corporation and the phrase finds its proper office in limiting the amount of the distribution in liquidation which may be considered a dividend from earnings or profits as distinguished from one composed of capital. We, therefore, conclude that (f), standing alone, justifies the deduction claimed by the respondent.

2. It is urged that the sweeping provision of (h) precludes the application of (f) in the circumstances disclosed, because (h) denies the credit unless the amount distributed is taxable to the distributee. By concession, the distribution here does not result in gain or loss to the parent company. The argument is, in effect, that (h) creates an exception to the rule formulated by (f).

As above said, each of the subsections of § 27 deals with a specific and particular topic. Subsection (f) deals with "distributions in liquidation" while subsection (h) deals with "nontaxable distributions." If (f) applies in this case, (h) is left to cover a substantial field of other sorts

of distributions. We should, of course, read the two sections as consistent rather than conflicting, if that be possible. Here, it is not only possible but begets no absurd or impractical result. We hold that (h) is not applicable to the facts of this case and that (f) is.

3. The petitioner points out that the Revenue Act of 1936 introduced a new policy,—to tax undistributed earnings in order to prevent a taxpayer from accumulating untaxed surplus, by forcing the payment of dividends which become taxable in the hands of the distributee. This is true, but it is also true that the Act made distributions to parent corporations nontaxable in order to encourage the simplification of corporate structures. It was avowedly for this reason that § 112 (b) (6) provided that no gain or loss to the parent company should in such case be recognized, and it may well be that subsection (f) of § 27 was inserted with the same purpose. The Government insists that, as § 115 (h)[7] provides that a distribution of the taxpayer's stock or securities, or those of another corporation, shall not be considered a distribution of earnings or profits of the taxpayer if no gain to the distributee from the receipt of such stock or securities is recognized by the law, subsection (f) must be read in the light of the policy thus declared by § 115 (h). The latter section is irrelevant to this controversy, because the distribution here was in property and money, and not in stock or securities. Section 115 (h) was amended in 1938, subsequent to the consummation of the transaction here in question, to include money or property, but we cannot, as the Government suggests, read into the section, as it stood when the transaction took place, an intent derived from the policy disclosed by the subsequent amendment.

We shall not burden this opinion by extended reference to the legislative history of the Act of 1936. It is enough

[7] 49 Stat. 1688.

to say that it is inconclusive and, to some extent, supports the arguments of both parties. But whatever may be said of the policy behind the statute's provisions, we are not at liberty to disregard the direct and unambiguous language of subsection (f).

4. Treasury Regulations 94, Art. 27 (f), declare that one making a liquidating distribution of earnings accumulated since February 28, 1913, must be denied the dividends credit in respect of such distribution unless the amount distributed is taxable in the same year to the distributee, but further provides that if the distributee, in that year, makes a distribution which entitles it to a dividends credit it may allocate a proper proportion thereof to the distributor of the liquidating dividend. It is insisted that the situation presented to the Treasury by the various provisions of the Revenue Act of 1936 was confused and complex, and the adoption of the regulation was proper in the circumstances and should control.

In view of what we have said as to the plain meaning of subsection (f), we think that no complexity or confusion is discoverable and that the regulation not only was contradictory of the plain terms of the subsection but attempted to add a supplementary legislative provision, which could only have been enacted by Congress. We hold, therefore, that the court below was right in refusing to give effect to the regulation.

The judgment is

*Affirmed.*

The CHIEF JUSTICE took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, MR. JUSTICE REED, and MR. JUSTICE DOUGLAS dissent. They are of the opinion that since Art. 27 (f) of Treasury Regulations 94 resolves the ambiguities between § 27 (f) and § 27 (h) of the Revenue Act of 1936,

it is a valid interpretative regulation and a proper exercise of the rule-making authority.