### COMMISSIONER OF INTERNAL REVENUE v. WINCHESTER REPEATING ARMS CO.

### WINCHESTER REPEATING ARMS CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8050—1.

Circuit Court of Appeals, Seventh Circuit.

March 8, 1943.

J. P. Wenchel and John W. Smith, Bureau of Internal Revenue, and Samuel O. Clark, Jr., Sewall Key, Arthur A. Armstrong, Helen R. Carloss, and Gerald L. Wallace, Dept. of Justice, all of Washington, D. C., for petitioner.

Geo. E. H. Goodner, of Washington, D. C. (Helen Goodner, of Washington, D. C., of counsel), for respondent.

Before EVANS, SPARKS and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

The principal question here presented is whether the taxpayer is entitled to a dividends paid credit of $2,160,274, for the year 1938, by reason of its distribution in that year to the Western Cartridge Company (which owned all its capital stock) of all its assets, including its earned surplus accumulated after February 28, 1913, in complete liquidation, followed by its dissolution.

The Tax Court allowed the credit claimed by the taxpayer, with only the brief statement that, "The respondent (Commissioner) concedes that prior Board decisions are opposed to his action in denying the credit for $2,160,274.14 of earned surplus distributed upon liquidation. Crown Zellerbach Corporation v. Commissioner, 43 B.T.A. 541; California Brewing Association v. Commissioner, 43 B.T. A. 721; Credit Alliance Corporation v. Commissioner, 42 B.T.A. 1020, affirmed, 4 Cir., 122 F.2d 361. * * * The Board follows its prior decisions * * *" In joint motions filed by the parties before this court, the statement was reiterated that the issue involved in the petition for review was identical with that involved in the Credit Alliance case then pending before the Supreme Court, and an extension of time for transmitting the record was granted on the ground that further prosecution of the cause depended on the decision of that case. However, since the decision of that case by the Supreme Court in favor of the taxpayer, the Commis-

sioner has sought to be relieved from these concessions, and to support his contention that the credit should be disallowed on a different theory, arising out of a difference in the wording of § 115(h) of the Act of 1938, 26 U.S.C.A. Int.Rev. Acts, page 1057, which he now considers significant.

We note that the Commissioner in the Credit Alliance case presented the same argument respecting the effect of the 1938 amendment of § 115(h) before the Board which was subsequently rejected by the Supreme Court. We also note that the decision of the Board rejecting this contention was promulgated by the Board October 22, 1940, ten days after the filing of the petition for review by the Board of Tax Appeals of the ruling of the Commissioner here involved, and before any further steps had been taken in the case at bar. Hence we are not impressed by the Commissioner's assertion that he did not anticipate the precise bearing of § 115(h) of the 1938 Act on the case at bar until after the decision of the Supreme Court in the Credit Alliance case. However, we do not base our decision to affirm the decision of the Tax Court in the case at bar on the narrow ground of the Commissioner's prior concession that the Credit Alliance case involved identical issues, hence, by inference at least, that the decision of that case should be conclusive as to our decision of this.

The facts as related to the taxpayer's right to the dividends paid credit here claimed are few and simple. In 1938, it determined to dissolve and liquidate by distributing all its assets, subject to liabilities, to the Western Cartridge Company in cancellation of its stock. This procedure was completed within the year 1938. The earned surplus of the taxpayer amounted to $2,160,274 as of the date of the transfer, and the taxpayer claimed the full amount as a dividends paid credit, which claim was disallowed by the Commissioner.

§ 27(g) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1023, on which the taxpayer relies, provides: "In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the basic surtax credit under this section, be treated as a taxable dividend paid." In the case of Helvering v. Credit Alliance Corp., 316 U.S. 107, 62 S.Ct. 989, 991, 86 L.Ed. 1307, the Supreme Court said of § 27(f) of the 1936 Act, 26 U.S.C.A. Int.Rev.Acts, pages 835–837, which is practically identical, "Although a distribution in liquidation of earnings which accrued subsequently to February 28, 1913, does not constitute a dividend in the proper sense of the term [citing Hellmich v. Hellman, 276 U.S. 233, 48 S.Ct. 29, 72 L. Ed. 400], subsection (f) categorically declares that a liquidating distribution, to the extent it is composed of such earnings, shall, for the purposes of computing the dividends paid credit 'be treated as a taxable dividend paid.' Plainly the section intends that a distribution of such earnings shall be considered a dividend. Further it provides that the distributing corporation may use the amount in computing its credit for dividends paid. And, to put the matter beyond cavil, the section also says that the distribution shall be treated as the payment to the distributee of a *taxable* dividend. * * * We, therefore, conclude · that (f), standing alone, justifies the deduction claimed * * *."

After rejecting the Commissioner's contention that a later subsection to § 27, sub. (g), created an exception to the rule formulated by (f), the Court reiterated that (h) was not applicable to the facts of the case, and that (f) was. The Court then proceeded to brush aside as wholly irrelevant the provision of § 115(h) of the 1936 Act, 26 U.S.C.A. Int.Rev.Acts, page 870, providing that a distribution of the taxpayer's stock or securities, or those of another corporation, should not be considered a distribution of earnings or profits of the taxpayer if no gain to the distributee from the receipt of such stock or securities were recognized by law, for the reason that the distribution there involved was in property and money and not in stock or securities. "Section 115 (h)was amended in 1938 subsequent to the consummation of the transaction here in question to include money or property, but we cannot, as the Government suggests, read into the section, as it stood when the transaction took place, an intent derived from the policy disclosed by the subsequent amendment. * * *" The Commissioner infers from this brief statement that, had the Credit Alliance case involved the application of § 115(h) as amended by the 1938 Act, the decision would have

been otherwise, and the Court would have held it relevant and "would have been convinced that Section 27(f) did not warrant the credit."

We find no basis in the opinion of the Court for this assumption. As pointed out therein, "we are not at liberty to disregard the direct and unambiguous language of subsection (f)." This subsection deals with the treatment of distributions in liquidation for the specific and limited purpose of computing the dividends paid credit under "this section," (§ 27 which has to do with the corporation credit for dividends paid).

The whole scheme for imposing a surtax on undistributed profits of corporations appeared first in the Act of 1936, §§ 26 and 27 of which provided for credits against the tax imposed by § 14, 26 U.S.C.A. Int. Rev.Acts, pages 823, 835, 837. § 115, relating to distributions by corporations, is older, parts of it going back to 1916, and subsection (h) of which was new in the Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 704. This subsection was amended in 1936, but we are informed by the Committee Report, No. 2457, 74th Congress, that, "While making no change in the rule as applied under existing law, the recommended amendment is desirable in the interest of greater clarity." In other words, the amendment in 1936, of a subsection enacted in 1934, was not intended to change the rule. Thus it will be seen that § 115(h), enacted in 1934 and amended in 1936, must have had a purpose entirely distinct from the subsequently enacted § 27. We are not informed by the Committee Reports on the 1938 Revenue Act as to the reason for the amendment of § 115(h) to cover distributions of property or money in addition to that of stock or securities, as provided by § 115 (h) of the 1936 Act. However, it does seem clear to us, that if Congress intended to change the scope of § 27(f), it would have done so directly, by amendment of that section, instead of remotely, by amendment of § 115(h). And if the language of § 27(f) of the Act of 1936 is "direct and unambiguous" as characterized by the Court, it remains equally direct and unambiguous in its counterpart, § 27 (g) of the Act of 1938, § 115(h) notwithstanding. Hence we are convinced that there was no error in the decision of the Tax Court as to the right of the taxpayer to the dividends paid credit claimed by virtue of § 27(g).

In this view of the case, it is unnecessary for us to consider a second question raised by the taxpayer's petition to review the decision of the Tax Court, relating to a dividends paid credit of $400,000 distributed in 1938 to retire certain notes distributed in 1937, for the purpose of paying a dividend for that year, and for which a credit for that year had been allowed. However, the same issue was presented by the case, Helvering v. Sabine Transportation Co., 63 S. Ct. 569, 87 L.Ed. ——, decided adversely to the Commissioner by the Supreme Court, March 1, 1943. If, upon possible review of the case at bar, we should be found in error in our conclusion that the taxpayer is entitled to the greater credit provided under § 27(g), it appears that it it entitled to the lesser credit provided by § 27(a) (4), 26 U.S.C.A. Int.Rev.Acts, page 1021, in the light of the decision by the Supreme Court of the Sabine case.

Affirmed.