General Aniline & Film Corporation, as Successor to General Aniline Works, Inc. v. Commissioner.
GAF v. Commissioner
Docket No. 193.
United States Tax Court
1944 Tax Ct. Memo LEXIS 359; 3 T.C.M. (CCH) 168; T.C.M. (RIA) 44051; February 25, 1944
*359 Malcolm D. Watson, Esq., 230 Park Ave., New York, N. Y., for the petitioner. Thomas H. Lewis, Jr., Esq., for the respondent. HILL Memorandum Opinion HILL, Judge: This proceeding, submitted upon a stipulation of facts incorporated herein by reference, involves a 1939 income tax deficiency of $67,277.56. The deficiency was determined against General Aniline Works, Inc., hereinafter called taxpayer, a Delaware corporation, to which petitioner, also a Delaware corporation, is successor by merger pursuant to section 59 A of the General Corporation Law of that State. The return for the year in question was filed with the collector for the second district of New York. Section 13 (c) of the Internal Revenue Code sets forth the method by which corporations of the class into which taxpayer fell shall compute their 1939 income tax. It provides that a tentative tax equal to 19 per centum of the adjusted net income shall be reduced by (a) 16 1/2 per centum of the credit for dividends received, and (b) 2 1/2 per centum of the dividends paid credit provided in section 27, but not to exceed 2 1/2 per centum of the adjusted net income. The balance is the tax. The controversy is over the amount of *360 the reduction to which taxpayer is entitled under (b) above. Taxpayer reduced the tentative tax by 2 1/2 per cent of its adjusted net income, per the limitation, on the claim that its dividends paid credit exceeded such income. Respondent held taxpayer's dividends paid credit to be substantially less than its adjusted net income and decreased the credit against the tentative tax accordingly. Petitioner thinks that in so doing respondent erred. The decision depends upon the answer to two questions arising from the agreed facts. The questions are (1) whether taxpayer was entitled to a dividends paid credit of $3,338,407.21 pursuant to section 27 (g) of the Internal Revenue Code as an amount distributed in liquidation properly chargeable to earnings or profits accumulated after February 28, 1913, and (2) whether the issuance of 27,500 shares of taxpayer's stock to petitioner, theretofore the owner of all taxpayer's outstanding stock, constituted an amount used to pay an indebtedness of $4,500,000 thereby entitling taxpayer to a dividends paid credit in such amount pursuant to section 27 (a) (4) of the Internal Revenue Code. If either of these questions requires an affirmative answer, *361 the petitioner must prevail, for the dividends paid credit would then exceed taxpayer's 1939 adjusted net income of $3,266,102.37, thus invoking the above described limitation to the credit for the purpose of the income tax computation. [The Facts] The facts pertinent to the first question follow. Petitioner was taxpayer's sole stockholder. On October 30, 1939, a plan of liquidation of taxpayer was submitted to petitioner's board of directors whereby all taxpayer's property was to be distributed to petitioner in complete liquidation of taxpayer. The transfer was to be in complete cancellation or redemption of taxpayer's stock and was to occur before December 31, 1939. The distribution and liquidation were to be effectuated by a merger into petitioner pursuant to section 59 A of the Delaware General Corporation Law. Upon the filing of the statutory "Certificate of Ownership" with the Secretary of State of Delaware, all taxpayer's certificates of capital stock were to be surrendered and cancelled. Within a day the plan was adopted by the directors of both corporations and by taxpayer's stockholder, the "Certificate of Ownership" was filed, and taxpayer distributed all its assets *362 to petitioner pursuant to the plan. Immediately preceding such distribution, taxpayer had earnings or profits accumulated from the date of its organization in 1924 amounting to $3,338,407.21. The liquidation of taxpayer by merger into petitioner complied with section 112 (b) (6) of the Internal Revenue Code and constituted a complete liquidation by which no gain or loss was recognized upon the receipt by petitioner of the property of taxpayer. Section 27 (g) of the Internal Revenue Code provides as follows: (g) Distributions in Liquidation. - In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the basic surtax credit under this section, be treated as a taxable dividend paid. Identical provisions of the Revenue Act of 1936 and the Revenue Act of 1938 were held to allow a liquidating corporation a dividends paid credit to the extent that the liquidating distribution was composed of earnings accruing subsequent to February 28, 1913, in Helvering v. Credit Alliance Corporation, 316 U.S. 107, and *363 Commissioner v. Winchester Repeating Arms Co., 134 Fed. (2d) 6, respectively. The same result was reached under the 1936 Act in Commissioner v. Kay Mfg. Corp., 122 Fed. (2d) 443, decided prior to the Supreme Court's decision in Credit Alliance Corp. Respondent disregards the latter authority. He seeks to avoid the impact of the other two by suggesting that the facts here are different in that a merger is involved rather than a liquidation. The distinctions inherent in the legal concepts of merger and liquidation are irrelevant to the question before us. Different answers may obtain, however, depending upon whether gain or loss from a given transaction is disregarded under the statutory non-recognition provisions of section 112 (b) (3) and (4) or under the provisions of section 112 (b) (6). Dividends paid credits were denied in Reed Drug Co. v. Commissioner, 130 Fed. (2d) 288, and Great Lakes Coca-Cola Bottling Co. v. Commissioner, 133 Fed. (2d) 953, wherein no gain, or loss was recognized by reason of section 112 (b) (3) and (4). However, the facts *364 here do not bring this case within those provisions. The Credit Alliance, Winchester and Kay cases all involved transactions invoking the non-recognition provisions of section 112 (b) (6). The differences calling for contrary conclusions in the two types of situations are explained in the Coca-Cola Co. case. Here the transaction actually results in a cancellation of all taxpayer's capital stock, the recipient had owned over 80 percent of the stock and the distribution was completed within the taxable year 1939. Hence, no gain or loss was recognized under the provisions of section 112 (b) (6) of the Internal Revenue Code and the transaction comes squarely within the type considered in Credit Alliance, Winchester and Kay cases, which, therefore, must be regarded as indistinguishable in principle from the present. Respondent's next point is urged in the face of these seemingly adverse decisions and constitutes a repetition of arguments there made and rejected under analogous sections of prior law. He contends that the word "properly", as used in section 27 (g), prevents amounts distributed in liquidation from being treated as taxable dividends paid if the distribution *365 is not considered out of earnings or profits under section 115 (h) of the Internal Revenue Code. Section 115 (h) provides that the distribution of a corporation's stock or securities or those of another corporation or of property or money shall not be considered a distribution of earnings or profits of any corporation if no recognized gain resulted to the distributee thereof. (The emphasized phrase, added by the Revenue Act of 1938 and continued in the Internal Revenue Code, is the only material change from the 1936 law in any of the sections deemed applicable by respondent). Since under section 112 (b) (6) no gain is recognized where one corporation receives property of another in complete liquidation, it follows, says respondent, that there can be no dividends paid credit under section 27 (g) as there is no distribution "properly chargeable to earnings or profits." Undaunted by the rejection of this argument in the Credit Alliance case, respondent actually draws comfort from the Supreme Court's opinion there. He infers from certain language used that his position would have been sustained had section 115 (h) of the 1938 Act or the Internal Revenue Code been involved instead *366 of section 115 (h) of the 1936 Act. The same inference was made before the Circuit Court of Appeals for the Seventh Circuit upon the appeal of Commissioner v. Winchester Repeating Arms, supra, wherein our Memorandum decision entered August 28, 1941, was affirmed. In declining to accept it that Court said: We find no basis in the opinion of the [Supreme] Court for this assumption. As pointed out therein, "we are not at liberty to disregard the direct and unambiguous language of subsection (f)," [Same as section 27 (g) of the Code]. This subsection deals with the treatment of distributions in liquidation for the specific and limited purpose of computing the dividends paid credit under "this section" (section 27 which has to do with the corporation credit for dividends paid). It went on to decide that the dividends paid credit for a distribution in liquidation made out of earnings or profits was allowable under section 27 (g) without reference to section 115 (h) of the Revenue Act of 1938. Having failed to convince the Seventh Circuit that the rule of the Credit Alliance case should be limited to situations arising under the 1936 Act, respondent *367 can only say that its decision was wrong. We think it was right. The basis upon which respondent rests his contention that section 115 (h), applying section 112 (b) (6), prevents a dividends paid credit under section 27 (g) is founded on his unshakable conviction that "properly chargeable to earnings or profits" (italics ours), as it appears in section 27 (g), means in consonance with all statutory provisions relating to distributions of corporate earnings and profits. The courts have made it perfectly clear that no such broad significance is to be attributed to the phrase. On the contrary, it simply means that a dividends paid credit may not be allowed for distributions out of capital. In Credit Alliance Corporation, 42 B.T.A. 1020, we said: We think it obvious that ordinary use and interpretation of the expression indicates what is paid or distributed out of earnings and profits, as contradistinguished from that which is distributed out of capital * * *. In Commissioner v. Credit Alliance Corporation, supra, which affirmed the Circuit Court's judgment affirming our decision, the Supreme Court said: * * * the phrase finds its proper office *368 in limiting the amount of the distribution in liquidation which may be considered a dividend from earnings or profits as distinguished from one composed of capital. In Commissioner v. Kay Mfg. Corporation, supra, the Circuit Court of Appeals for the Second Circuit said: * * * Section 27 (f) deals with liquidation distributions from the standpoint of the liquidating corporation rather than the distributee. When it speaks of part of such distribution as being "properly chargeable" to accumulated earnings, we agree with the Board that the term was used in its ordinary meaning to distinguish between capital and earnings and without reference to whether the earnings would be taxable in the hands of the distributee. * * * This language was repeated with approval by the Circuit Court of Appeals for the Sixth Circuit in Fowler Brothers & Cox, Inc. v. Commissioner, 138 Fed. (2d) 774. We are not persuaded that these unequivocal expressions are misconceived. Respondent's argument is rejected again. Coming back to the present proceeding, it appears that taxpayer immediately before the distribution, had earnings or profits accumulated *369 after February 28, 1913, amounting to $3,338,407.21. Since it distributed all its assets it perforce distributed such earnings or profits. Thus, the Credit Alliance, Winchester and Kay cases require the conclusion that taxpayer was, and that petitioner as its successor is, entitled to a dividends paid credit in that sum under the provisions of section 27 (g) of the Internal Revenue Code. We so hold. Inasmuch as the dividends paid credit allowable under section 27 (g) exceeds taxpayer's adjusted net income for the year 1939, consideration of the second question becomes unnecessary. Respondent erred in denying a credit against the tentative tax computed under section 113 equal to 2 1/2 percent of taxpayer's adjusted net income of $3,266,102.30. Other adjustments giving rise to the deficiency were not contested. They will be given effect in the final settlement under Rule 50. Decision will be entered under Rule 50.