## HAY v. COMMISSIONER OF INTERNAL REVENUE.
### No. 5269.

Circuit Court of Appeals, Fourth Circuit.
Nov. 13, 1944.

Joseph D. Brady, of Los Angeles, Cal., (Brady & Nossaman and Walter L. Nossaman, all of Los Angeles, Cal., on the brief), for petitioner.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty.

Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The petition for review questions a decision of the Tax Court which held that William C. Hay, a British subject, was liable to an additional income tax in excess of $600,000 for the year 1937 upon the liquidation of William C. Hay, Ltd., a California corporation. There is no serious question of fact since the findings of the Tax Court were supported by abundant evidence, which is summarized in the following recital: Hay was born a British subject in Canada in 1884. He took up his residence in Los Angeles in 1914, and became a naturalized citizen of the United States in 1918. He acquired the ownership of a corporation which was successfully engaged in the manufacture of building material. In 1930 the assets and good will of this corporation were sold and Hay agreed that he would not thereafter carry on the building material business. The name of the corporation was changed to William C. Hay, Ltd., and Hay was the sole owner of its stock. He devoted himself to a study of stocks, bonds and investments and some of the company's money was used in making stock investments. The company also embarked in certain manufacturing and mining ventures. In 1937 the assets of the company, which were in a liquid condition, were worth in excess of $2,000,000. The cost of the stock of the corporation to Hay was $32,500.

For years Hay had been in poor health, and was frequently confined to his bed by a tubercular affection of the lungs. He became alarmed over the death duties which his estate would have to pay if he should be a citizen or resident of the United States at the time of his death, and over the income tax to which his estate would be subjected if dividends were declared by the corporation to provide funds to meet the estate tax. On this account he worked out a plan in 1936, with the aid of a Canadian tax expert, to expatriate himself and transfer his property to Nassau in the Bahama Islands where there was no income tax, and the death duties were negligible. In that year he took up his residence in Canada and on June 17, 1937, was repatriated as a British subject and has since retained that nationality.

Shortly thereafter, he went to Los Angeles to wind up his personal affairs and remained there until July 21, 1937, when he went to Nassau, accompanied by the tax expert. He leased a home for a year and became a resident of that place. Immediately he took steps to organize a Nassau corporation which was chartered on August 4, 1937, under the name of Colonial Trust Company, Ltd. On August 6, 1937, all the stock of William C. Hay, Ltd., was transferred to Colonial, Ltd., for all of its stock, consisting of 5,000 shares of 100 pounds each, that is, stock of a total face value of 500,000 pounds or $2,491,583 expressed in United States currency.

For personal reasons Hay was obliged to go to Canada early in August, 1937, and was absent from Nassau until October 10, 1937. Early in November his attention was called by a visiting economist to legislation proposed for enactment in the United States in 1938 for the purpose of taxing the surplus of American corporations, especially holding companies. Hay became alarmed and decided to liquidate Hay, Ltd. Colonial Trust Company, holder of the Hay, Ltd., stock, filed a written consent to the dissolution, as required by the California law, and the Board of Directors of Hay, Ltd., held a meeting in Nassau on December 3, 1937 and took the necessary steps for the winding up of the corporation and the distribution of its assets. On December 10, Hay, Ltd., conveyed to Colonial, Ltd., all of its assets, consisting of $1,190,185.74 in Canadian banks, $875,400 in United States banks and certain shares of industrial corporations whose certificates were shortly thereafter reissued to Colonial, Ltd. Colonial, Ltd., was never engaged in any other business.[1] It had an office in the suite of an attorney in Nassau, who as-

[1] In August, 1937, Colonial, Ltd., purchased 3,000 shares of the Pervel Corporation with funds lent it by the taxpayer. In November, 1937 Colonial, Ltd., required Hay, Ltd., to turn over some real estate and oil properties to the Beverly Oil Company in exchange for all of its capital stock. The Beverly Oil Company was newly formed for the purpose of placing it under the management of the taxpayer's son to afford him some business experience. These transactions involved only an insignificant part of the assets under the control of the taxpayer and represented activities carried on solely for his individual benefit.

sisted in its incorporation and a room in Hay's residence. It had no employees.

■ In order for Hay to accomplish the purposes which he had in mind in 1936 and 1937, it was necessary to rid himself of the shares in Hay, Ltd., since his estate would have been taxed upon them upon his death even if he were a nonresident alien. See 26 U.S.C.A. Int.Rev.Code, § 862(a); Revenue Act 1926, § 303(d), as amended by Revenue Act 1934, § 403(d), 26 U.S.C.A. Int.Rev.Acts, page 240. He could have rid himself of the shares by liquidating the California corporation but this method would have subjected him to a large income tax. He therefore formed the plan first to transfer the shares of Hay, Ltd., to Colonial, Ltd., a wholly owned foreign corporation, and then to liquidate Hay, Ltd., and distribute its assets to Colonial, Ltd. There was some evidence that the exchange of shares on August 6, 1937 was an independent and complete transaction which had no relation to the dissolution of Hay, Ltd., on December 10, 1937, but the Tax Court held that while the particular time of the dissolution in December was selected because of the pending tax proposals in the United States, Hay contemplated the liquidation of Hay, Ltd., from the beginning and both steps were part of a single plan conceived to accomplish the desired purpose. Upon these facts the Tax Court held that Hay made a profit by the December liquidation which was taxable under §§ 211(b) and 212 (a) of the Revenue Act of 1936, Ch. 690, 49 Stat. 1648, 26 U.S.C.A. Internal Revenue Acts, pages 904, 905, because Hay was a nonresident actually engaged in trade or business in the United States in the tax year and the profit was derived from sources within the United States.

The taxpayer in opposition to this conclusion first contends that the only transaction upon which he gained a profit was the transaction of August 6, 1937 and that the profit therefrom was not taxable. This profit the taxpayer says, amounted to $2,459,083 and was derived from the exchange of the stock of Hay, Ltd., which cost $32,500, for the stock of Colonial, Ltd., which was worth $2,491,583. It is conceded that this profit, if profit it was, was not taxable because Hay was a nonresident alien and the exchange took place outside the United States.[2]

■ We are of opinion, however, that this conclusion does not require a reversal of the decision below because, as the Tax Court found, the exchange of August 6, 1937 was not an independent transaction but the first of two steps in a single plan which culminated in the dissolution of Hay, Ltd., in December of that year. We do not think that a taxpayer can avoid the incidence of an income tax by splitting a transaction into nontaxable parts if a taxable gain is derived from the transaction considered in its entirety. Moreover, it is obvious that Hay made no actual profit from the exchange of August 6, 1937. He merely exchanged all the shares of one corporation for all the shares of another corporation. Before the exchange he held the shares of Hay, Ltd., which owned valuable properties in the United States, and after the exchange, he held the shares of Colonial, Ltd., a holding company which owned the shares that Hay formerly possessed. The securities which Hay held after the exchange had precisely the same value as those which he held before the exchange. For the practical purposes of taxation it was as though the taxpayer merely shifted his property from one pocket to another. In Higgins v. Smith, 308 U.S. 473, 476, 60 S.Ct. 355, 84 L.Ed. 406, it was held that no deductible loss occurred upon a sale by a taxpayer to a cor-

---

[2] Gain is not recognized under § 112(b) (5) when property is transferred to a corporation by a person in exchange for the stock of the corporation, and immediately after the exchange such person is in control of the corporation; but § 112(i) provides that a foreign corporation shall not be considered as a corporation under § 112(b) (5) unless it has been established to the satisfaction of the Commissioner that the exchange was not in pursuance of a plan for the avoidance of income taxes. The taxpayer made no attempt to comply with § 112(i). Therefore any profit on the exchange of August 6 would have been taxable, were it not for the fact that the exchange took place in Nassau at a time when the taxpayer was a nonresident alien. Section 119(f) requires that an exchange be treated as a sale and § 119(e) provided that a gain from property bought in the United States and sold outside the United States shall be treated as derived from sources outside the United States. Section 212(a) excludes from the gross income of a nonresident alien income from sources outside the United States. The combined effect of these sections was that any profit derived by the taxpayer from the exchange of August 6, 1937 was not a taxable gain.

poration wholly owned by him. It is equally true that the taxing authorities may refuse to recognize the gain which arises from such a sale or exchange, at least when it is clear from the circumstances that the underlying purpose of the transaction is tax avoidance. It is no answer to say that the taxpayer did not take steps to satisfy the Commissioner under § 112(i) and § 112(b) (5) of the Act that the exchange was not made pursuant to a plan for tax avoidance and hence a gain must be recognized, for it does not necessarily follow that a gain must be recognized by the Commissioner when none in fact was earned.

■■■ We come then to consider the transaction of December, 1937 when Hay, Ltd., was liquidated and its assets were distributed to Colonial, Ltd. The taxpayer contends that at that time it was Colonial, Ltd. and not Hay which owned the shares of Hay, Ltd., and caused its dissolution and received its assets on distribution; and that the separate juristic existence of Colonial, Ltd., cannot be ignored merely because Hay was the sole owner of its stock. Whatever tax obligation was involved, it is said, was the obligation of Colonial, Ltd. The decisions do not justify this conclusion under the circumstances in this case. We must bear in mind that the primary purpose of Colonial, Ltd., was to minimize taxation and enable Hay to secure possession of the assets of Hay, Ltd., without paying the large tax which the liquidation of the company and the distribution of its assets to Hay in this country would have involved. Colonial, Ltd., in fact, as the Board found, had no other business purpose. The Supreme Court in Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406, had no hesitancy in disregarding the corporate entity when it held that no deductible loss occurred upon a sale by a taxpayer of his assets to a wholly owned corporation. On this point the court said, 308 U.S. at page 477, 60 S.Ct. at page 357, 84 L.Ed. 406:

"The taxpayer cites Burnet v. Commonwealth Improvement Co., [287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399], as a precedent for treating the taxpayer and his solely owned corporation as separate entities. In that case the corporation sold stock to the sole stockholder, the Estate of P. A. B. Widener. The transaction showed a book profit and the corporation sought a ruling that a sale to its sole stockholder could not result in a taxable profit. This Court concluded otherwise and held the identity of corporation and taxpayer distinct for purposes of taxation. In the Commonwealth Improvement Company case, the taxpayer, for reasons satisfactory to itself voluntarily had chosen to employ the corporation in its operations. A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages.

"On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property."

See, also, Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499; Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; United States v. Brager Bldg. & Land Corp., 4 Cir., 124 F.2d 349; Schoenheit v. Lucas, 4 Cir., 44 F.2d 476, 479. For an interesting discussion of this problem see, Case, Disregard of Corporate Entity in Federal Taxation—The Modern Approach, 30 Va. Law Review 308.

■■ The taxpayer makes the further argument that even if he received a gain from the liquidation of Hay, Ltd., in December, 1937, the gain was derived from sources outside the United States and should therefore be excluded from his gross income under § 212(a) because at the time he was a nonresident of the United States. The argument proceeds along this line. Colonial, Ltd., was the owner of the shares of Hay, Ltd., and caused its dissolution. The income of Hay, Ltd., came in large part from sources in the United States, but the distribution of its assets took place in Nassau where its officers, in exchange for its shares, delivered its assets to Colonial, Ltd. Hence the gain was not taxable because § 115(c), 26 U.S.C.A. Int.Rev.Acts,

page 868, provides that amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock and the gain or loss to the distributee resulting from the exchange shall be determined under §§ 111 and 112 as to the amount thereof and taxed as capital gains or losses under § 117(a). Moreover, § 119 (e) and (f) provide that gain from the purchase of personal property within the United States and its sale or exchange without the United States shall be treated as derived from within the country where the sale or exchange takes place. In Helvering v. Syndicate Varieties, 78 U.S.App.D.C. 306, 140 F.2d 344, 345, a surrender of shares by a stockholder in complete liquidation was treated as a sale. Consequently it may be treated here as an exchange. Cf. Commissioner v. Callahan, 2 Cir., 143 F.2d 214.

It is further said that it is immaterial that Hay, Ltd., conducted all of its business in the United States. It is true that the source of the income of a corporation is the criterion adopted by § 119(a) (2) of the source of an ordinary dividend of the corporation; but the source of the corporation's income was rejected as the criterion of the gain derived from the exchange of shares for the assets in liquidation. In the latter case, Congress made the place of the exchange the only criterion of the source of the gain. There is an essential difference between a liquidating dividend and an ordinary dividend. The word "dividend" is defined in § 115(a) to mean any distribution made by a corporation to its stockholders out of its earnings or profits without regard to the amount. A dividend must be in the ordinary course of business under Article 115 (1) of Regulations 94. A liquidating dividend, on the other hand, is a complete distribution. The Supreme Court said in Helvering v. Credit Alliance Corp., 316 U.S. 107, 110, 62 S.Ct. 989, 86 L.Ed. 1307, that a distribution in liquidation of earnings does not constitute a dividend in the proper sense of the term. It follows, so the argument runs, that even though Hay received a gain from the transaction of December, 1937, it was derived from sources without the United States and was therefore not taxable.

The argument seems logical on its face but it leads to the extraordinary conclusion that Congress intended to say that an ordinary dividend should be regarded as derived from the same source as the income of the corporation, but a dividend which completely liquidates the corporation and includes earnings as well as capital assets should not be so regarded but should be treated as derived in the country where the stockholder surrenders his stock certificates and receives his share of the assets. It cannot be denied that from a practical standpoint the source of a liquidating dividend is the place where the capital assets and earnings of the corporation have been accumulated. Nor can it be denied that in the case of a complete liquidation and dissolution of the corporation, the decisive act which frees the corporate assets from the corporation's control and makes them the property of the stockholders takes place in the state of incorporation, for it is there that the final steps to comply with the statutes which permit the termination of the corporate life are taken. California Civil Code, §§ 400, 400a, 401, 401a, 403c.

Looking at the question from this viewpoint, we cannot conclude that a distribution in liquidation may not be treated as a dividend derived from sources in the United States under § 119(a) (2). Such a distribution ordinarily includes accumulated earnings and profits and such earnings, irrespective of the amount, fall within the meaning of the term dividend as defined in § 115(a) of the Act. In the pending case all but a very small part of the distribution consisted of earnings, as we have already shown. It is true that § 115(c) declares that amounts distributed in complete distribution of corporate assets shall be treated as in full payment in exchange for the stock and this language furnishes some color for the argument that such a distribution involves an exchange which may take place outside the United States and gives rise to a gain derived from sources without the United States under § 119(e). But we think that the primary purpose of § 115(c) was to provide for the determination of the amount of gain resulting from a complete distribution and to direct that it be taxed as a capital gain under § 117 of the Act. It is obvious that the distribution amongst the stockholders of all the assets of a corporation in the course of a complete liquidation accompanied by a surrender of the certificates of stock is not a sale or exchange in the sense in which these terms are employed in other sections of the statute. It is not the result of a contract between the parties but solely the act of the cor-

poration; and the beneficial interest in the corporate assets passes to the stockholders before they surrender their stock certificates, so that the individual stockholder has no alternative but to assent to the termination of the corporate life and accept his proportionate share of the corporate assets. Our conclusion is that the liquidating distribution of Hay, Ltd., which had conducted all of its business in the United States, must be considered as derived from sources in the United States and that the distribution was therefore properly included in the gross income of the nonresident taxpayer under §§ 211(b) and 212(a) of the Act.

■ It is also contended that even if the gain from the distribution of December 10, 1937 was derived from sources within the United States, the amount of the tax thereon was erroneously determined. It is pointed out that under § 211(a) of the Act, the amount of the tax levied upon dividends and other specified kinds of income is limited to ten per cent of the amount received in the case of a nonresident alien "not engaged in trade or business within the United States and not having an office or place of business therein"; and it is said that the taxpayer was not so engaged and had no such office after June 17, 1937, when he became a nonresident alien. The evidence does not support the contention. Hay was president of Hay, Ltd.; and it was stipulated at the hearing in the Tax Court that he received a salary of $1500 per month, which amounted to $10,500 for the first seven months of 1937. From June 18 or 19 to July 21, 1937, after his expatriation, he was in California and most of the time in Los Angeles where the office of the corporation was located. It cannot be questioned that during this period he was a nonresident alien engaged in business within the United States, or having an office therein.

■ Finally, the taxpayer contends that he was denied due process of law in the Tax Court by the manner in which the trial was conducted. The gist of the charge is that the Commissioner changed the basis of his determination after issue was joined by the Commissioner's answer to the taxpayer's petition for review and that the taxpayer did not have a fair opportunity to meet the new theory advanced by the Commissioner at the hearing. It is said that the Commissioner's final notice of deficiency was based on the theory that

the taxpayer realized a taxable gain from the transaction of August 6, 1937, because he was not a nonresident alien at the time; but that at the hearing the additional theory was proposed that Colonial, Ltd., was a fictional corporation devised to avoid taxation and hence its existence should be disregarded and the distribution of December 10, 1937, should be treated as made to the taxpayer personally. In short, it is urged that the taxpayer came into court to show that he was a nonresident alien in August, and that the exchange which took place in Nassau in that month was not taxable; but he did not come into court to show that Colonial, Ltd., had an independent existence, or that the gain involved in the transaction of December 10 was derived from sources outside the United States, or that Hay was not engaged in business in California in 1937.

We think that there is no substance in the point. It is true that the deficiency letter seems to have been based on the August exchange and that the Commissioner's answer to the taxpayer's petition for review took issue with his assertions that he was a nonresident of the United States in August and that any profit in the August transaction was derived from sources outside the United States. But the taxpayer was not surprised at the hearing when the Commissioner's attorneys announced that they relied also on the December transaction. On August 28, 1942, nearly two months before the hearing in the Tax Court, a conference was held between counsel for the opposing parties to the case and Hay's attorneys were notified that at the hearing to be held in the Tax Court the Commissioner would not confine himself to the August transaction but would also endeavor to show that even if that transaction was not taxable, the taxpayer did receive a taxable gain in December.

When the case was heard in the trial court on various days between October 16 and October 23, 1942, there was much discussion of the proper scope of the trial and it was finally determined by the judge that the two transactions were so interrelated that the trial should not be limited to the events of August 6 but should also cover the liquidation of December 10, and that if the evidence disclosed that the form of liquidation through Colonial, Ltd., was adopted only to enable the taxpayer to escape taxation, the taxpayer might properly be held liable for the tax realized thereon. The trial then proceeded on this basis. It

clearly appears from the record that both transactions were examined in detail and that the taxpayer in fact had full opportunity to produce evidence with regard to both transactions. He made no showing in the Tax Court and he has made no showing in this court that any other testimony relating to the December transaction exists which, if adduced in the Tax Court, might have led to different findings of fact. Obviously it would serve no good purpose to remand the case to the Tax Court for a further hearing.

The decision of the Tax Court is affirmed.