In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 16-3300, -3303, -3304

WISCONSIN CENTRAL LTD., ILLINOIS CENTRAL R.R. CO., and
GRAND TRUNK WESTERN R.R. CO.,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 14 C 10243, 10246, 10244 — **Gary Feinerman**, *Judge*.

ARGUED MARCH 30, 2017 — DECIDED MAY 8, 2017

Before POSNER, MANION, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. Beginning in 1996, the plaintiff-appellants, subsidiaries of the Canadian National Railway Company (to simplify we'll refer to the subsidiaries as "the railway"), began including stock options in the compensation plans of a number of employees. In this suit against the government, the railway argues that income from the exercise of stock options that a railroad gives its employees is not

a form of "money remuneration" to them and is therefore not taxable to the railway as compensation under the Railroad Retirement Tax Act, 26 U.S.C. § 3231(e)(1), which defines "compensation" as "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." See also *BNSF Railway Co. v. United States*, 775 F.3d 743 (5th Cir. 2015).

As explained in *Standard Office Building Corp. v. United States*, 819 F.2d 1371, 1373 (7th Cir. 1987), "the Railroad Retirement Tax Act, passed in 1937, is to the railroad industry what the Social Security Act is to other industries: the imposition of an employment or payroll tax on both the employer and the employee, with the proceeds used to pay pensions and other benefits. … The Act requires the railroad to pay an excise tax equal to a specified percentage of its employees' wages, and also to withhold a specified percentage of its employees' wages as their share of the tax. The railroad retirement tax rates are much higher than the social security tax rates."

The question presented by this case is whether the excise tax should be levied not only on employees' wages but also on the value of stock options exercised by employees who, having received the options from their employer, exercise them when the market price exceeds the "strike price" (the price at which the employee has a right to buy the stock) and thus obtain the stock at a favorable price. The Internal Revenue Service answers yes, see 26 C.F.R. § 31.3231(e)-1, and the district court agreed, precipitating this appeal.

The lawyer for the IRS told us at oral argument that anything that has a market value is a "form of money remuneration." That goes too far; it would impose a tax liability on an

employer who bought an employee a birthday cake, even though the employee could do nothing with his cake except eat it or give it away. But if instead he exercises a stock option, he now owns stock, and stock has so well-defined a monetary value in our society that there is no significant economic difference between receiving a $1000 salary bonus and a share or shares of stock having a market value of $1000.

By compensating an employee with stock options rather than cash the employer encourages the employee to work harder for the company, because the better the company does the more valuable its stock is. The value of a company's stock is a function of the company's profitability, whereas the size of a cash bonus, once it is given, is unaffected by the company's future business successes or failures. Underscoring the point, we note that the railway's stock-option plans are performance-based: they can be exercised only if the company achieves specified goals.

As the discussion in the preceding paragraphs implies, the fact that cash and stock are not the same things doesn't make a stock-option plan any less a "form of money remuneration" than cash. Indeed the railway offers its employees a choice to have an agent exercise an employee's stock option, sell the shares of stock obtained by that exercise of the option, reserve part of the money received in the sale for taxes and administrative costs, and deposit the balance in the employee's bank account. An employee who uses this method will thus experience the stock option as a cash deposit.

It's true that the Railroad Retirement Tax Act, in which the term "money remuneration" appears, dates back to 1935,

when the nation was mired in the Great Depression of the 1930s which had driven down the value of corporate stock. Maybe stock then wasn't a form of money remuneration, but there is no reason to think that the framers and ratifiers of the Act meant money remuneration to be limited to cash even if, as was eventually to happen, stock became its practical equivalent, just as today 100 dimes is the exact monetary equivalent of a $10 bill. A $10 bill is paper; so is a stock certificate that can be sold for $10. The dictionary definition of money may remain constant while the instruments that comprise it change over time: sheep may have once been a form of money; now stock is. The Internal Revenue Code of 1939 is of limited help here; it treats "money" and "stock" as different concepts, but that's not inconsistent with stock options' falling within "any form of money remuneration."

The equivalence of stock to cash is actually signaled in the statutory exception for *qualified* stock options, explicitly divorced from "money remuneration" by 26 U.S.C. § 3231(e)(12). That exception, by virtue of its narrowness, supports an inference that *non-qualified* stock options, which are the options at issue in this case, are covered by the term "money remuneration" and are therefore taxable. There are moreover other statutory exceptions for other forms of non-cash employee benefits, and their existence reinforces the inference that non-qualified stock options are "money remuneration" and therefore taxable. See, e.g., § 3231(e)(1) (excluding payments for health insurance or health care and travel expenses); (e)(5) (excluding non-cash employee achievement awards); (e)(6) (excluding educational benefits); (e)(9) (excluding value of meals and lodging provided to employees); and (e)(10) & (11) (excluding contributions for medical and health savings plans).

The government's position also makes good practical sense by avoiding the creation of a tax incentive that might distort the ways in which employers structure compensation packages for their managers. And finally we are not alone in equating non-qualified stock options to money remuneration in the Railroad Retirement Tax Act. See *BNSF Railway Co. v. United States*, *supra*, 775 F.3d at 757; *CSX Corp., et al. v. United States*, No. 3:15-cv-427-BJD-JRK (M.D. Fla. March 14, 2017).

AFFIRMED.

MANION, *Circuit Judge*, dissenting. The railroad plaintiffs have sought a tax refund on the ground that stock options they provided to their employees aren't taxable as "compensation" under the Railroad Retirement Tax Act. Compensation under the Act is defined as "any form of money remuneration paid to an individual for services rendered as an employee to one or more employers." 26 U.S.C. § 3231(e)(1). The railroads argue that stock options aren't "money remuneration," so they are not taxable as "compensation" under the Act.

The court disagrees. Although it admits that "[m]aybe stock … wasn't a form of money remuneration" when the RRTA was enacted, the court posits that "there is no reason to think that the framers and ratifiers of the Act meant money remuneration to be limited to cash" in the event of future economic changes. Maj. Op. at 4. Even if that were true, our job is to interpret the Act as it would have been understood by people at the time it was enacted, not to speculate about the intent of Depression-era legislators. Because the plain language of the statute's definition of "compensation" does not cover stock or stock options, I respectfully dissent.

"It is a 'fundamental canon of statutory construction' that, 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'" *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). "That means we look to the meaning of the word at the time the statute was enacted, often by referring to dictionaries." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016) (citations omitted). There are some "common law statutes" whose meaning may evolve

over time, such as the Sherman Antitrust Act. See *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 899 (2007). But neither party has argued that the RRTA falls into that category, and the specific contrast Congress drew between it and the Federal Insurance Contributions Act (FICA) belies this contention. Thus, we must interpret the RRTA using normal principles of statutory interpretation, giving effect to the words Congress chose. If the stock options at issue wouldn't have been money remuneration in 1935, neither should they be in 2017.

As the statute is written, it is clear that "money remuneration" does not include stock options. For one, as I alluded to above, "it is well established that RRTA and FICA are parallel statutes." *BNSF Ry. Co. v. United States*, 775 F.3d 743, 754 (5th Cir. 2015). But they are not identical; they contain different definitions of what is taxable. The RRTA subjects to taxation "compensation," defined as "any form of *money remuneration* paid to an individual for services rendered as an employee to one or more employers." 26 U.S.C. § 3231(e)(1) (emphasis added). FICA, on the other hand, taxes "wages," which are "*all remuneration* for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." *Id.* § 3121(a) (emphasis added).

We must give effect to Congress's distinction between "money remuneration" and "all remuneration." "After all, it is axiomatic that such notable linguistic differences in two otherwise similar statutes are normally presumed to convey differences in meaning." *United States v. Smith*, 756 F.3d 1179, 1186 (10th Cir. 2014) (Gorsuch, J.); see also *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 530 (1982) ("[A]lthough two statutes may be similar in language and objective, we must not fail to

give effect to the differences between them."). The court's result effectively reads this contrast out of the statutes, rendering the words "money" and "all," as well as the two references to "cash" in the FICA definition, mere surplusage. That is "always a disfavored result in the business of statutory interpretation." *Smith*, 756 F.3d at 1186. "While it is possible that [these differences were] inadvertent, that possibility seems remote given the stark difference that was thereby introduced into the otherwise similar texts." *United States v. Ressam*, 553 U.S. 272, 277 (2008).

The difference in the statutes reveals that "money," when contrasted with "all," is a word of limitation. Further, its original meaning would not have encompassed company stock or stock options. The contemporary Webster's Second Dictionary defined "money" principally as "[m]etal, as gold, silver, or copper, coined, or stamped, and issued by recognized authority as a medium of exchange." Webster's New International Dictionary of the English Language 1583 (2d ed. 1934). More generally, money was "[a]nything customarily used as a medium of exchange and measure of value, as sheep, wampum, copper rings, quills of salt or of gold dust, shovel blades, etc." *Id.* Its synonyms were "cash," "currency," and "legal tender." *Id.* In other words, media of exchange issued by a recognized authority. Simply put (and as the court somewhat acknowledges), money remuneration meant remuneration in cash or cash equivalents.[1]

---

[1] The court concedes that "money" isn't everything with a monetary value. Maj. Op. at 2-3. The value of this concession is limited. There is a market for everything, even the birthday cake that the court points to as the quintessential non-money item. The only difference between the birthday cake (and personal property, for that matter) and a share of stock is

Furthermore, the Internal Revenue Code of 1939, which included for the first time the definitions of "compensation" and "wages" under the RRTA and FICA, consistently treated money and stocks separately. One example is Section 115, which governed distributions by corporations. It said that when a distribution is payable "either (A) in its stock or in rights to acquire its stock ... or (B) in money or any other property (including its stock or in rights to acquire its stock)," then the distribution shall be considered a taxable dividend "regardless of the medium in which paid." 1939 Code, § 115(f)(2). Section 115(h)(1) said that such a distribution would not be considered a "distribution of earnings or profits of any corporation" if "no gain to such distributee from the receipt of such stock or securities, property or money, was recognized by law." See also *Helverling v. Credit Alliance Corp.*, 316 U.S. 107, 112 (1942) (Section 115(h) was inapplicable "because the dis-

---

that the latter's value is more easily discoverable (because it's listed on a public exchange). But what about stock in a closely-held corporation, the value of which is not so obvious to the public? The court's result requires drawing a distinction on this non-textual basis. Interpreting the statute as it was originally understood avoids this problem.

Moreover, although it's true that the stock options are not taxed until they are exercised (meaning that the employee purchases the stock at the strike price), it seems strange to call a stock option "money remuneration" when its value is so contingent on future performance. While a share of stock in a publicly traded company has a well-known value, a stock option's value isn't quite the same thing. If an employee receives an option to purchase one share of Canadian National stock at $50 per share, but the stock plunges to $40 per share the next day and remains there during the length of the option, the option would be worthless. Although it would never be taxed in that instance, it would also not be of much value to the employee, who would have preferred "money remuneration."

tribution here was in *property and money* and *not in stock or securities*" (emphases added)). And Section 1857 defined a safe deposit box as "any vault, safe, box, or other receptacle, of not more than 40 cubic feet capacity, used for the safe-keeping or storage of jewelry, plate, *money*, specie, bullion, *stocks*, bonds, *securities*, valuable papers of any kind, or other valuable personal property." (emphases added). Examples are plentiful throughout the Code. This supports the conclusion that the original meaning of "money" did not encompass either stocks or stock options.[2]

The court relies on later-enacted statutory exceptions—principally a 2004 exception for qualified stock options added to both the RRTA and FICA—to draw an inference that "money remuneration" is broader than its original meaning suggests. However, "absent a clearly established congressional intention, repeals by implication are not favored." *Branch v. Smith*, 538 U.S. 254, 273 (2003) (plurality opinion) (citations and internal quotation marks omitted). Implied repeal can occur only: "(1) [w]here provisions in the two acts are in irreconcilable conflict;" and "(2) if the later act covers the whole of the subject of the earlier one and is clearly intended as a substitute." *Posadas v. National City Bank of N.Y.*, 296 U.S. 497, 503 (1936).

Neither exception to the presumption against implied repeal is applicable. First, there is no conflict between a general

---

[2] Furthermore, the RRTA was enacted during the Great Depression, when corporate stock would not have been understood to be as liquid as it is today. Employees in the 1930s would not have taken it kindly had they been asked to accept company stock options in lieu of money remuneration. That lends credence to the conclusion that stock and stock options were not money remuneration.

definition and an exception that might cover things the general definition doesn't cover. In *United States v. Quality Stores, Inc.*, 134 S. Ct. 1395, 1402 (2014), the Supreme Court explained that, under the broad FICA "wages" definition, a statutory "command that all severance payments be treated 'as if' they were wages for income-tax withholding is in all respects consistent with the proposition that at least some severance payments are wages." After all, "the statement that 'all men shall be treated as if they were six feet tall does not imply that no men are six feet tall.'" *Id.* (quoting *CSX Corp. v. United States*, 518 F.3d 1328, 1342 (Fed. Cir. 2008)). The converse of this is that an exception might exclude, for whatever reason, something the general definition already omits. There might be any number of explanations for this. Congress might have wanted to fill a potential gap without revisiting the general definition. In any event, there is no conflict between the general provisions and the exceptions, as both are consistent with the excepted forms of remuneration not being "money remuneration." Moreover, there can be no serious contention that an exception to a definitional statute "covers the whole subject" of the original definition, so the second exception to the presumption against implied repeal is also inapplicable.

To be sure, "the implication of a later enactment … will often change the meaning that would otherwise be given to an *earlier provision that is ambiguous*." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 330 (2012) (emphasis added). However, the definition of "compensation" in the RRTA is not ambiguous with respect to the question presented here. As I have demonstrated, the original meaning of "money remuneration" was limited to cash and cash equivalents and did not include stock or stock options.

Because the definitional statute is unambiguous, the later-enacted exceptions cannot alter its meaning.

In sum, Congress has long treated railroads differently than other industries. See, e.g., Federal Employers Liability Act, 45 U.S.C. § 51 *et seq.*; Railway Labor Act, 45 U.S.C. § 151 *et seq.* In the labor relations context, the Supreme Court has cautioned that "parallels between the [National Labor Relations Act] and the [Railway Labor Act] … should be drawn with the utmost care and with full awareness of the differences between the statutory schemes." *Chic. & N. W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 579 n.11 (1971). For whatever reason, the RRTA is another example of this. Given the increased liquidity of corporate stock, it may be long past time to remove the word "money" from the definition of compensation under the RRTA, but we lack the power to do so where Congress has declined.[3] Therefore, I would hold that the non-qualified stock options provided to employees of these railroads are not taxable as compensation under the RRTA.

I respectfully dissent.

---

[3] I must point out that, although I would hold the non-qualified stock options non-taxable under the RRTA, the proceeds from the sale of stock are of course taxable under generally applicable laws when the employee makes a profit. From the railroads' perspective, of course, they would avoid paying the tax on their end of the transaction.